JOHN L. NOBLE

*v.*

THE ILLINOIS CENTRAL RAILROAD COMPANY.

*Filed at Springfield September 27, 1884.*

1. RESERVATION IN DEED—*as to right of way—whether title passes as to part excepted.* A conveyance of land by a railway company, with this reservation, "excepting a strip of land running through the whole length of said premises, two hundred feet wide, used as a right of way, containing twelve acres," is held not to pass any title or other interest in the portion excepted for a right of way.

2. SAME—*reservation of right to take and remove gravel for railroad ballasting—extent and character of the right.* A railway company purchased a tract of land for the purpose of obtaining a right of way over the same, and the right of taking gravel therefrom for ballasting its road, and having no other use for the land, conveyed it to one owning adjoining land, reserving forever all the gravel on and in the same, and also the right to dig for gravel on any part of said land, with a view of opening one or more gravel pits, and to remove the deposit from the same, and to build one or more railroad tracks to any gravel pit or pits, etc.: *Held*, that the reservation should be so construed as to give a practical right, and that the grantor had no right to remove sand alone, or take from sand banks proper, but might take gravel from the gravel pits, notwithstanding there was a mixture of sand in it.

3. Such a reservation is broad enough to include the right to remove all gravel deposits from the land, or deposits of which the greater part is gravel, or such as are known as "gravel" according to the common acceptation of that word, or such as is usually employed by railroad companies for ballasting. Under it, the company, before removing gravel, is not bound to sift the sand from it, or separate small veins and pockets of sand found in gravel pits, from the same.

4. SAME—*acquiescence in the taking of sand as well as gravel—license implied.* Under a reservation in a deed of a right to enter the granted premises and take and remove therefrom all gravel found thereon, if the owner of the land is present when pits are being opened and gravel removed, and assists in the work himself, and with his teams and hands, and makes no objection that sand in the same is also taken, his acquiescence in the rightfulness of the acts being done, is, by implication, a license, sufficient to prevent him from recovering damages therefor.

Appeal from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of McLean county; the Hon. Owen T. Reeves, Judge, presiding.

. This was an action on the case, in the McLean circuit court, brought by the appellant, against the appellee, to recover the value of a quantity of sand of the plaintiff taken and converted by the defendant to its use, and also to recover for damages done by the defendant to lands described in the declaration, in which lands the plaintiff had an estate in vested remainder. The defendant pleaded the general issue, the license of plaintiff for. doing the acts complained of, and several other special pleas, upon which issues were joined.

The land in question was on September 19, 1866, conveyed by the Illinois Central Railroad Company to Harrison Noble, since deceased, (the ancestor of the plaintiff,) by warranty deed, which contained the following reservations, namely: "Excepting a strip of land running through the whole length of said premises, two hundred feet wide, used as a right of way, containing twelve acres; and reserving also, forever, to the said Illinois Central Railroad Company, all the gravel on and in said tract of land and premises, and reserving also the right to dig for gravel on any part of said lands herein before described, with a view of opening gravel pits, one or more; and reserving also to said company all the gravel on said premises, and the right to remove the same; also, the right of way, forever, over said lands and premises, upon which to build one or more railroad tracks to any gravel pit or pits on said premises, and to and from any gravel which may hereafter be discovered thereon, and the right to construct, maintain and operate said railroad tracks with engines and cars thereon, to said gravel pits, for the purpose of removing gravel from said pits, or any of them, over and from said land and premises." Harrison Noble died seized of the

land, by his will giving to his widow a life estate therein, and the remainder to his son, the plaintiff.

That part of the premises to which this suit relates is underlaid with sand and gravel. In places the sand and gravel are intermixed in the proportion of one-third sand to two-thirds gravel. In other places the sand lies in *strata*, and the gravel likewise in *strata*, the gravel in places being between *strata* of sand. The *strata* of sand extend nearly east and west, and are from four inches to two and a half feet in thickness, and in width from ten to fifty feet. In some places there are large quantities of sand in pockets, or beds, of various dimensions.

The court, at the request of the plaintiff, instructed the jury as follows:

"1. The court instructs the jury, that if they believe, from the evidence, that the defendant conveyed the premises in question to Harrison Noble, reserving the gravel therein, and the right to remove the same, and that Harrison Noble afterwards, by will, gave a life estate in the premises to Mrs. Jane Noble, and the remainder therein to the plaintiff, and that said Harrison Noble is now deceased, then the plaintiff has the right to recover the value of all the sand which may have been shown by the evidence to have been wrongfully removed from said premises by the defendant.

"2. And the court instructs the jury, that if the evidence shows that the defendant did remove any considerable quantity of sand from said premises which could have been separated from the gravel by ordinary methods, then, as to such sand, the jury should find for the plaintiff to the extent of its value.

"3. And the court further instructs the jury, that the duty of the defendant to separate the sand from the gravel before removing the gravel from the premises, does not depend upon the question of there being a market for all the sand that

could be separated from the gravel, but that the fact of ownership of the sand by the plaintiff, if shown by the evidence, gave him the legal right to have the sand left upon the premises, so far as it may have been shown by the evidence to have been practicable to separate and remove the gravel without removing the sand with the gravel.

"4. The court instructs the jury, for the plaintiff, that if they believe, from the evidence, that the defendant took from the plaintiff's property, sand, which could have been easily and practically, by the exercise of ordinary care and prudence, separated from the gravel, then, in such case, the defendant had no right to take such sand, and in such case the plaintiff is entitled to recover for the sand so taken, what the same was worth on the market at the pit.

"5. The court instructs the jury, in behalf of the plaintiff, that if they believe, from the evidence, that the plaintiff assisted in plowing up the gravel, and that in rendering such assistance he did no more than the defendant had a right to do under the terms of the deed from the defendant to plaintiff's father,—that is, to remove the gravel,—then, in such case, the plaintiff is not prevented from recovering damages on that account."

The plaintiff asked the following instructions, which the court refused:

"6. The court instructs the jury, that under the deed offered in evidence in this case, the defendant reserved no right to remove any sand from the premises when the sand existed separate and apart from the gravel; and if the evidence shows that any such sand was removed by the defendant from the premises, and converted to its own use, without the license of the plaintiff, the jury should, in such case, find for the plaintiff to the extent of the value of such sand.

"7. If the jury believe, from the evidence, that the defendant hired the plaintiff to work for it in and about plowing up

the gravel and sand in question, that it did not ask his opinion as to its rights or his consent to its acts, and that it was entirely uninfluenced by the fact that he hired to it to do the work aforesaid, then no license to remove the sand can be implied from such hiring and work, and so far as this is concerned, in such case such conduct constitutes no obstacle to a recovery in this case by the plaintiff.

"8. Upon the question of the practicability of separating the sand from the gravel, the court instructs the jury that if the sand and gravel could be separated without resorting to extraordinary and expensive methods, then it was practicable to separate the sand from the gravel; and in such case it was the duty of the defendant to separate the sand from the gravel, and leave the sand upon the premises.

"9. The court instructs the jury, that under the deed offered in evidence in this case, the defendant reserved no property right or title in or to the sand intermixed with the gravel in the premises in question, and that the only right it has in respect to such sand arises from necessity, when in fact it is impracticable to remove the gravel without removing it with the sand, and that such right is limited by the necessity which gives rise to it; and if the jury believe, from the evidence, that it was practicable to separate the sand from the gravel before removing the gravel from the premises, then the defendant was bound to so separate it; and if the jury believe, from the evidence, that the defendant removed any sand from said premises without separating it from the gravel, and converted the sand to its own use, and if the jury believe, from the evidence, that it was practicable to have separated such sand from the gravel before removing the same from the premises, then the jury should find for the plaintiff to the extent of the value of such sand so removed."

And the court, at the instance of the defendant, instructed the jury as follows:

"1. The court instructs the jury, for the defendant, that under the deed given in evidence by the plaintiff, from the Illinois Central Railroad Company to Dr. Harrison Noble, under whom the plaintiff claims, the defendant had the right to remove from said land all the gravel thereon suitable for railroad purposes, provided the same was done in a reasonably careful and prudent manner; and in removing said gravel, if sand or other things were so mixed or intermingled with the said gravel that it could not practically be separated therefrom, then defendant, in removing said gravel, had a right to take with it all such sand or other substances as could not be practically separated from the gravel; and if you believe, from the evidence, that the defendant removed said gravel in a reasonably prudent manner, and did not remove from said land any sand that could have been practically separated from said gravel, you will find for the defendant.

"2. The law presumes that the Illinois Central Railroad Company, by the reservation in the deed given in evidence by the plaintiff in this case, intended to reserve a valuable right, and all reasonable intendments must be given to this reservation to render such right valuable; and even if the jury believe, from the evidence, that there were some pockets, or veins, or *strata*, of sand in the pit in controversy, which were removed by the defendant, yet if you further believe, from the evidence, that to separate this from the gravel in the pit would have been so expensive and difficult as to render the said reservation valueless as to all such sand, you will find the defendant not guilty.

"3. If you believe, from the evidence, that the railroad company did employ the usual and ordinary means of excavating its gravel and loading it upon its cars, and that it was impracticable and unreasonably expensive for it, in so doing, to save and separate the sand, or any part thereof, from the gravel, you will find the defendant not guilty.

"4. If the jury believe, from the evidence, that the plaintiff, knowingly, either by himself or servants, assisted in removing and carrying away the sand which he seeks in this suit to recover for, then he can not recover.

"5. The railroad company had the right to run in trains and load the gravel upon cars, and was not bound to use wagons or wheelbarrows; and if the sand in controversy could only have been practically saved and separated by the defendant's removing the gravel by wagons, or other vehicles than trains of cars, then the defendant was not bound to separate and save the sand."

The plaintiff excepted to the refusal of the court to give the instructions asked by him, from No. 6 to 9, inclusive, and to the giving of each of the instructions for the defendant.

The jury returned a verdict of not guilty, and the plaintiff moved the court to grant a new trial, which motion the court overruled, and entered judgment for the defendant upon the verdict, to which ruling the plaintiff excepted, and prayed an appeal to the Appellate Court, which was granted and perfected. The Appellate Court affirmed the judgment of the circuit court, and the plaintiff, by his further appeal, brings the case to this court.

Mr. JOHN E. POLLOCK, and Mr. AARON G. KARR, for the appellant:·

It is a rule of construction that where there is a doubt as to the construction of a deed, it shall be taken most favorably to the grantee. *City of Alton* v. *Illinois Trans. Co.* 12 Ill. 58; *Sharp* v. *Thompson,* 100 id. 450; 3 Washburn on Real Prop. (4th ed.) 397, 398.

The same rule applies to exceptions in deeds. If there is a doubt as to its construction, it shall be taken most favorably to the grantee. *Duryea* v. *Mayor,* 62 N. Y. 592.

An exception must not be repugnant to the grant. If it is, it is void. 3 Washburn on Real Prop. (4th ed.) 434; *Cutler* v. *Tufts,* 3 Pick. 272; *Schoenberger* v. *Lyon,* 7 W. & S. 194.

An exception must be of something that can be severed from what is granted. 3 Washburn on Real Prop. (4th ed.) 434; *Borst* v. *Empie,* 1 Seld. 38; *Maynard* v. *Maynard,* 4 Edw. Ch. 714; *New Jersey Zinc Co.* v. *Boston Franklinite Co.* 2 McCart. Ch. 461.

The deed from the Illinois Central Railroad Company to Harrison Noble passed everything in the lands to him except the gravel, and if this can not be separated, it is also passed by the deed. It was the duty of the defendant to separate the sand from the gravel, or let it alone, and not remove it at all. *Brown* v. *Brown,* 8 Metc. 573; *New Jersey Zinc Co.* v. *Boston Franklinite Co.* 2 McCart. Ch. 461.

In order to create an estoppel, the party estopped must have induced the other party to occupy a position which he would not have occupied but for such acts and declarations. The conduct must be such as would ordinarily lead to the results complained of. A party can not rely upon an estoppel from acts and representations, upon which he was not induced to act otherwise than he would; and the acts must influence the conduct of another. *Ball* v. *Hooten,* 85 Ill. 161; *Heffner* v. *Vandolah,* 57 id. 524; *St. Joseph Manf. Co.* v. *Daggett,* 84 id. 557; *Straus* v. *Minzesheimer,* 78 id. 493.

There is no rule of law that requires a property owner, in order to save his rights, to enter into an argument with a willful trespasser, or to forbid him to commit the trespass. He is under no obligation of any kind to utter a word of remonstrance or objection, but may rely upon the law of the land for his redress. His mere silence in the presence of the trespass waives nothing and consents to nothing. *Lesber* v. *Railway Co.* 29 Minn. 260.

Messrs. Williams, Burr & Capen, for the appellee:

Like every other contract, if the intention of the parties to a deed in using certain language in it can be ascertained, such intention must be carried out; and if that intention can be ascertained as well from the attendant circumstances, the situation of the parties, and the state of the thing granted, as from the language employed in the deed, effect must be given to it. *Batavia Wagon Co.* v. *Newton Wagon Co.* 91 Ill. 239; *Hadden* v. *Shoutz,* 15 id. 581; *Wilcoxen* v. *McGhee,* 12 id. 381; *Hoole* v. *Blakey,* 53 id. 502; *City of Peoria* v. *Darst,* 101 id. 609; *Whitaker* v. *Brown,* 46 Pa. St. 197; *Howard* v. *Lincoln,* 13 Maine, 122; *United States* v. *Appleton,* 1 Sum. 492; *Wiler* v. *Siddons,* 41 Iowa, 224; *Mather* v. *Chapman,* 40 Conn. 382; 2 Kent's Com. 556; Sheppard's Touchstone, 89, 100; *Dand* v. *Kingcote,* 6 M. & W. 174; *Hinchcliffe* v. *Earl of Kennoul,* 5 Bing. 9.

Thus, where a man sells a close to which there is no access except over his other lands. *Howton* v. *Frecusson,* 8 T. R. 50; *Holmes* v. *Goring,* 2 Bing. 56; *Nickols* v. *Luce,* 24 Pick. 102; *Collins* v. *Prentice,* 15 Conn. 39; 3 Kent's Com. 422; *French* v. *Carhart,* 1 N. Y. 96; *Hodgson* v. *Field,* 7 East, 613.

A right reserved to a grantor to go "across" land, means by the route most convenient for him,—not necessarily transversely. *Brown* v. *Meady,* 10 Maine, 91.

A reservation of standing trees reserves also so much of the soil as is necessary to sustain them, and right of access to remove them. *Cromwell* v. *Sheldon,* 3 N. Y. 255; *Ashley* v. *Pease,* 18 Pick. 268; *Bigelow* v. *Battel,* 15 Mass. 313; *Johnson* v. *Rand,* 6 N. H. 22.

A title or right acquired by the grantor by reservation in a deed poll, stands upon the same footing as that which is acquired by direct grant or conveyance. *Stockbridge Iron Co.* v. *Hudson Iron Co.* 107 Mass. 290.

The same rules of construction apply to the reservation in a deed as to any other contract. . See cases above, and *French* v. *Carhart*, 1 N. Y. 96; *State* v. *Wilson*, 42 Maine, 9.

A grantor, in making a reservation in a deed, is to be presumed to intend to reserve something valuable. See cases above. *Volenti non fit injuria.*

Mr. JUSTICE DICKEY delivered the opinion of the Court:

In this case no question is made in respect to the construction or effect of the exception of the two hundred feet strip for a right of way. As to that, no title or other interest ever passed by the deed; but the controversy relates to the meaning and effect of the reservation of "all the gravel on and in said land and premises," and "the right to dig for gravel on any part of said lands, * * * with a view of opening gravel pits, one or more," and the right to remove such gravel. If the plaintiff's ancestor had expressly granted the rights and privileges intended to be reserved by the railroad company, there would be but little difficulty in determining the rights of defendant; and no reason is perceived why this reservation should not be construed like a grant, in the light of the facts and circumstances under which the parties acted.

It appears from the evidence that many years ago the defendant discovered a bed of gravel upon the land described in the declaration, and by digging "wells," as the witnesses call them, in different places, found a large quantity of gravel on the land. To obtain a right of way, and control of the gravel for ballasting on its road bed, the railway company purchased the premises, but having no other use for the land, in 1866 conveyed the same, with the exceptions and reservations in the deed, to Harrison Noble, who then owned the adjoining lands. The greater part of this tract was agricultural or pasture land, without any gravel, the gravel being in the main on one side of the same. The gravel is found six

or eight feet beneath the surface of the earth, and is mixed, more or less, with sand, capable of being separated by sifting; but to so separate them would render the right to remove the gravel entirely worthless. There was also evidence that in central Illinois, where this land lies, there is a well recognized distinction between a sand bank and a gravel pit, and that there are no deposits in this part of the State of pure sand or pure gravel, and that when the sand predominates, so that the gravel can readily be screened from it, the place of deposit is called a sand bank; and when the greater part of the mass is too coarse for mortar or building purposes, it is called a gravel bed.

Under these circumstances, the right to take and remove this gravel from the land for the use of the road, whether derived by grant or reservation, was a valuable privilege to the railroad company, and judging from the language of the reservation in the deed, in the light of the attendant facts and circumstances, it will be presumed that the company intended not to part with this privilege, but to retain its rights in this respect as they existed at the time of making the conveyance. The intention is manifest that the company thereafter was to have the same right it before that time had to enter upon the premises, and remove therefrom the gravel found in gravel pits, doing no unnecessary damage to the land. Under this reservation the company had no right to remove sand alone, or take from sand banks proper, but might take gravel from gravel pits, notwithstanding there was a mixture of sand in it. The reservation must be so construed as to give a practical right, and not so as to render it worthless or unavailing. The reservation is broad enough to include the right to remove all gravel deposits from the land, or deposits of which the greater part is gravel, or such as are known as "gravel" according to the common acceptation of that word, or such as is usually employed by railroad companies for ballasting; and the company, before removing

such gravel, is not required to sift the sand from it, or sepa-
rate small veins and pockets of sand found in gravel pits,
from the same.

It is urged that the circuit court erred in giving instruc-
tions for the defendant, and in refusing instructions for the
plaintiff.

The fourth of defendant's instructions told the jury that if
the plaintiff, knowingly, either by himself or servants, assisted
in removing and carrying away the sand, he can not recover.
The seventh instruction for the plaintiff, which was refused,
told the jury that if the defendant hired the plaintiff to work
for it in and about plowing up the gravel and sand in ques-
tion, that it did not ask his opinion as to its rights or his
consent to its acts, and that it was entirely uninfluenced by
the fact that he hired to it, then no license could be implied
from such hiring and work.

There was evidence on the trial that the plaintiff furnished
the defendant part of the time with two teams, and afterwards
with one team, and hands, to use the same about the gravel
pit, which were used in plowing and scraping off the earth to
reach the gravel, and also in plowing in the gravel. His
teams also plowed into the sand in the gravel pit, and Lis-
comb testified that he saw the plaintiff driving his team there
once, and that he plowed up sand and gravel together. John
O'Connor testified: "We were not forbidden to take what
little sand was mixed up with the gravel. When Noble was
working himself, he was working in the service of the com-
pany. I think he was, all the time I was there, scraping the
surface off." Tucker, who controlled the men and kept their
time, testified: "Noble's teams worked there, and Noble him-
self one-half day. He was scraping off the top of the gravel.
\* \* \* Noble saw how we were doing the work, and never
made any objections, or asked me to save the sand, or told
me what to do with it, or pointed out any place where the
sand was that he claimed. We did not talk much." This

evidence was sufficient to authorize the court in giving the defendant's fourth instruction.

The seventh instruction asked by the plaintiff is objectionable in making the question of an implied license of the plaintiff depend upon the fact that the company, in taking and removing the sand with the gravel, was uninfluenced by the fact that plaintiff hired his teams and hands to it, to work for it. Plaintiff's acts, such as, his failure to make any objection to the work being done and about to be done, or to point out any sand he wished saved, were more likely to influence the defendant than the employment of the plaintiff. By these acts the parties in interest gave construction to the contract. If appellant intended to resist the claim of the defendant, it was his duty to have objected, then and there. His silence, under the circumstances, was a recognition of the rightfulness of defendant's construction of the provisions of the deed. By acquiescing in the removal of the gravel from his land, and assisting therein, he, at least by necessary implication, licensed what was done, with his consent. If the defendant was taking deposits containing too much sand, in his judgment, he should have made his objection at the time. Not having done so, his conduct was such as to assure the defendant and its servants that it was proceeding rightfully, or at least with his consent.

We fail to discover any substantial error in the giving or refusing of instructions. The court instructed the jury as favorably for the plaintiff as he had any right to require.

The judgment will have to be affirmed.

*Judgment affirmed.*