# American Spirits Manufacturing Company, Appellee, v. Western Manufacturing and Oil Company, Appellant.

## Gen. No. 6,515.

1. LANDLORD AND TENANT—*when recovery by landlord for repairs and supplies furnished to repair plant on basis of former charge is proper.* Where the owner of a degerminating plant enters into a contract for the lease of its premises and machinery to another company, which agrees to turn over the machinery to the lessor in as good condition of repair at the expiration of the lease as it was at the beginning and to pay a certain rental, and materials furnished for repairs and supplies necessary for operation of the plant are furnished by the lessor and labor paid for by the lessor on the basis of a quarter of a cent per bushel of grain mashed, there can be a recovery of the value of labor and materials unpaid for at the prices customarily and previously charged, in the absence of notice by the lessee that it did not desire the practice to be continued.

2. ASSUMPSIT, ACTION OF, § 93a*—*what is measure of damages in action for money paid for use of another.* The measure of damages in an action for money paid for the use and benefit of another is the sum actually paid by plaintiff.

3. ASSUMPSIT, ACTION OF, § 23*—*when recovery under common counts proper.* If nothing remains to be done under a contract except the payment of money, there can be a recovery under the common counts.

4. LANDLORD AND TENANT—*when notice by lessee to lessor of intention no longer to be bound by former rate of charges for repairs not shown.* Evidence consisting of letters written by the president of the lessee of a degerminating plant to the president of the lessor, *held* insufficient to show notice by the lessee to the lessor of intention no longer to be bound by an established course of dealing relative to compensation for labor paid for the lessor and the making of repairs and replacements in the machinery by the lessor, and charging the cost thereof to the lessee at an established rate.

5. LANDLORD AND TENANT—*when evidence as to number of men employed by lessor inadmissible in action to recover cost of repair of leased machinery.* In an action by the lessor of a degerminating

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Amer. Spirits Mfg. Co. v. W. Mfg. and Oil Co., 210 Ill. App. 454.

plant against the lessee to obtain reimbursement for money advanced for labor employed in the plant on the basis of the customary charge of a quarter of a cent a bushel of grain mashed and for materials furnished for repairs and supplies necessary for operation of the plant at the customary rate, evidence as to the number of men employed by plaintiff at different times was properly excluded in so far as it might tend to show the reasonable value of the work for which a quarter of a cent per bushel was charged.

Appeal from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed April 9, 1918.

STEVENS, MILLER & ELLIOTT, for appellant; CHARLES H. STOLL, WINSLOW EVANS and FRANK R. GROVER, of counsel.

FRANK J. QUINN and JOSEPH A. WEIL, for appellee; ALFRED S. AUSTRIAN, of counsel.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

Appellee, a corporation, hereafter called the spirits company, sued appellant, a corporation, hereafter called the oil company, in assumpsit, and filed the common counts. The defendant filed the general issue. There were other pleadings not discussed in the briefs and not material on questions presented here. There was a judgment on a verdict of $5,766.23 for the plaintiff.

It appears from the evidence that February 20, 1897, the spirits company was engaged in making spirits and high wines from corn and small grains at Peoria, Illinois, and on that date it entered into a contract with the oil company to sell it its degerminating plant situated adjacent to its Monarch Distillery there, and lease it the land on which it was situated, and furnish it at least 6,000 bushels of corn daily for degermination for at least 200 days a year, and on demand any other corn it might use in its business in Peoria, and

456 APPELLATE COURTS OF ILLINOIS.

Amer. Spirits Mfg. Co. v. W. Mfg. and Oil Co., 210 Ill. App. 454.

sufficient power to enable the oil company to properly operate said plant to a capacity of at least 10,000 bushels of corn daily; and the oil company in turn agreed to extract the germ from at least 6,000 bushels of corn daily and return the corn to the spirits company in as good condition as when the same was delivered, the contract to be effective for a period of 40 years from date. October 19, 1898, the companies entered into a written agreement amending said contract, providing that the oil company should operate at the spirits company's plant at its Great Western Distillery, at Peoria, instead of the former-named plant, reciting that the spirits company was constructing an oil milling department, including proper machinery for degerminating corn, at said Great Western Distillery, and granting the oil company for the same term and under the same conditions as set forth in said contract of February 20, 1897, the sole and exclusive right to the use of that degerminating and other machinery, and agreeing that all corn used at said distillery during the period of said agreement should be delivered to the oil company for the purpose of being degerminated by it. The oil company agreed to use the said machinery and the privileges therein granted in such manner as not to interfere with the business of the spirits company, and that at the termination of the contract it would turn the machinery over to the spirits company in as good condition of repair as the same then was.

The parties engaged in business as forecast by the modified contract, but in less than 5 years from its date the spirits company commenced to advance money to pay for all labor employed in degerminating the corn and making oil and cake at that plant, and the oil company compensated the spirits company therefor on the basis of a quarter of a cent a bushel of grain mashed at the distillery. Monthly statements and balance sheets were issued showing such payments,

and that course of dealing continued up to October 1914, when the oil company ceased such payments. The spirits company continued the work and the principal part ($4,776.13) of its account here sued on is a charge at that rate for those services from October 1914 to August 1, 1915. The balance of the account ($990.10) is for the cost of repairs and replacements of apparatus and machinery to keep the plant in order and the work in progress. The oil company, as before noted, had agreed to turn the machinery over to the spirits company at the termination of the contract "in as good condition of repair as the same are at present," and it appears to have been the uniform practice for the spirits company to charge for and receive payment from the oil company of its necessary disbursements of that kind while it was so furnishing labor to operate the plant.

The verdict and judgment are for the full amount of the spirits company's claim. The oil company contends that the plaintiff was not entitled to judgment on proof that said labor and material were furnished and of the cost of the material to the plaintiff, but that there should have been further proof of what such services and material were reasonably worth. It argues also that said apparatus and machinery were in part used in the business of the spirits company, and that there is no sufficient proof to support the conclusion that the sum of $990.10 was a fair charge to be paid by the oil company; and also that there can be no recovery under the common counts because it says there was no express contract to pay the sums demanded. The spirits company answers that it had the right to rely on the long-established course of dealing and to continue furnishing such labor and material on the terms and prices so established until it should receive notice from the oil company that it would not continue in that course of dealing under

458    Appellate Courts of Illinois.

Amer. Spirits Mfg. Co. v. W. Mfg. and Oil Co., 210 Ill. App. 454.

those terms, and that it received no such notice before this suit was brought.

We think the spirits company is right in its contention on the law. "Where labor and services are rendered in a continuous employment, the rule is that for labor and services so furnished, a recovery can be had at the rates previously recognized and paid." (*Glucose Sugar Refining Co. v. Flinn*, 184 Ill. 123, 125.) Where an employer continues to receive services without notice of any change in the compensation that has been for a considerable time paid, the employee has the right to presume that the compensation will continue as in the past. If the employer intends to change the terms of the employment to the detriment of the employee, good faith and honesty require that he should give the employee notice and thus enable him to leave the service if not satisfied with the reduction. (*Crane Bros. Mfg. Co. v. Adams*, 142 Ill. 125, 129.) The same principle applies to money laid out and material furnished for repairs and supplies necessary in operating the degerminating plant. A request of the oil company that the spirits company expend such money may be implied. (27 Cyc. 837.) The measure of damages in an action for money paid for the use and benefit of another is the sum actually paid by the plaintiff. (27 Cyc. 845.) The benefit to plaintiff may be more or less than that sum.

It is immaterial whether the contract was express or implied. If nothing remained to be done under the contract except to pay over money, there could be a recovery under the common counts. *Expanded Metal Fireproofing Co. v. Boyce*, 233 Ill. 284; *Concord Apartment House Co. v. O'Brien*, 228 Ill. 360; *Evans v. Howell*, 211 Ill. 85; *Shepard v. Mills*, 173 Ill. 223. The evidence showed purchase of the material charged for "at the market price"; that there were no discounts or allowances that did not appear in the statements. This was some evidence of the market value of the ma-

terials and supplies. Moreover, there was evidence tending to show that the oil company had a representative on the ground that authorized $783.03 of the replacements and repairs in question.

But the oil company contends that two letters of April 21, 1915, and April 26, 1915, written by its president to the president of the spirits company, afforded notice to the spirits company that it would no longer be bound by the established course of dealing. We find nothing in either or both of those letters to justify that conclusion. They indicate some personal hostility among officers of the two companies, and some irritation over other correspondence, but there is no indication whatever that the oil company did not expect that the labor and material which the spirits company were furnishing should be settled for under the long-established terms and conditions. The spirits company was virtually operating the degerminating plant as the agent of the oil company. It would not have been justified in suspending operations or operating at a loss for the want of necessary repairs and replacements that it had been for so long a time buying and paying for and charging to the oil company. The proof shows without much contradiction that all these repairs and replacements were necessary, and that their apportionment between the work of the oil company and the spirits company was fair. But the court at the instance of the oil company instructed the jury that the plaintiff could only recover such amount, if any, as it had proven by the greater weight of evidence was reasonably necessary for the repairs and materials claimed to have been furnished. Under the plaintiff's instructions the jury's attention was directed to the necessity of the repairs made and supplies furnished, and the question of the proportionate charge to the defendant of moneys expended. Under these instructions both facts were passed on by the jury and their conclusion should not be disturbed.

Appellant argues that during the period when the custom was formed, the two companies had common officers and common interests so that it was not very material what price was paid by one to the other; that we should consider the oil corporation as a subsidiary company of the spirits corporation during that period, and not presume that customs established under that condition were intended to continue when the conditions changed. Admitting appellant's claim that the interests of stockholders of the respective corporations may not have been the same during the period of the account sued on as they were before—though there is little evidence to show that—and further admitting that the facts and circumstances of each individual case must be taken into account in determining whether parties intend in their present dealings to be governed by prices and conditions established in former dealings, still the rule holds that in the absence of any notice or of anything in the changed condition to indicate that either party desires to change the terms of dealing, they would be compelled to settle in accordance with those terms. If those terms were more beneficial than they should have been to either company and had been acquiesced in because it was a matter of little difference to the real owners of the two companies, and a change was desired by either company when the interest became less identical, it was the duty of the one desiring the change to notify the other.

The oil company offered testimony as to the number of men employed at two or three different times by the spirits company in the work in question, to which the court sustained objections. The testimony was properly excluded in so far as it might show or tend to show the reasonable value of the work for which a quarter of a cent a bushel was charged. That was not an issue in the case. It might have been admissible as showing or tending to show that no such service was

performed if it had been offered for that purpose; but it, of itself, did not show that; there was no statement of intention to offer other testimony showing that, and there is no claim that the service was not performed. We find no error in the rulings on the evidence. There is some discussion of the rulings of the court on instructions given and refused. None of them are in conflict with the views of the law and the facts here before expressed; furthermore, but for the question as to the apportionment of some of the charges for replacements and repairs making up the $990.10 item, a verdict might have been directed for the spirits company. There was no evidence to prevent that action of the court as to the $4,776.13 item; therefore, technical inaccuracies in the instructions, if they had occurred, would not have amounted to reversible error.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

MR. JUSTICE NIEHAUS took no part.