612     Appellate Courts of Illinois.

Am. Spirits Mfg. Co. v. Western Mfg. and Oil Co., 213 Ill. App. 612.

## American Spirits Manufacturing Company, Defendant in Error, v. Western Manufacturing and Oil Company, Plaintiff in Error.

### Gen. No. 6,590.

1. Contracts, § 215*—*how contract to separate starch from corn construed.* A contract to separate starch from corn and to return the starch to the party furnishing the corn must be construed as requiring separation of only such amount of starch as is practicable with the best machinery and the best operation.

2. Action, § 37*—*when in assumpsit not changed to tort.* In assumpsit for the value of starch lost in separation from corn for the plaintiff, the form of the action is not changed to tort by averments of wrongful taking and conversion.

3. Assumpsit, Action of, § 89*—*proof of allegation of wrongful taking.* An allegation of wrongful taking in a declaration in assumpsit does not require strict proof.

4. Contracts, § 381*—*when evidence as to acquiescence in mode of separation of starch from corn and quantities delivered erroneously excluded.* In assumpsit for the value of starch retained by the defendant, acting under a contract to separate the starch from corn, return it to the plaintiff and keep the other parts of the corn, it is erroneous to exclude evidence that the plaintiff acquiesced in the mode of separation and the quantities of starch delivered, for several years, and that later the plaintiff undertook to do the separating by its own employees.

5. Contracts, § 330*—*when party estopped to complain of method of separating starch from corn.* In assumpsit for the value of starch alleged to have been retained by the defendant under a contract to separate the starch, return it to the plaintiff and retain the other parts of the corn furnished by the plaintiff, the plaintiff is estopped to complain of the method used by general superintendence and acquiescence in the mode of separation and quantities delivered for many years and subsequently performing the operation through its own servants.

6. Damages, § 190*—*when evidence insufficient to support verdict for value of starch retained by defendant under contract to separate starch from corn.* In assumpsit for the value of starch alleged to have been retained by the defendant under a contract to separate the starch, return it to the plaintiff and retain the other parts of the corn furnished by the plaintiff, evidence as to the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

number of pounds of starch so retained and ultimately sold by the defendant with the other ingredients in its feed cake, and the selling price of the feed cake, is not sufficient to support a verdict for damages in the absence of evidence that the feed cake sold for as much as it would have brought without the starch, and an offer by the defendant to prove that the presence of the starch decreased the amount of oil obtained by the defendant from the remaining product.

7. APPEAL AND ERROR, § 1833*—*when plea of statute of limitations may be interposed after remanding.* A defendant may be permitted to file a plea of the statute of limitations before a case is again called for hearing after reversal and remanding.

Error to the Circuit Court of Peoria county; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the October term, 1918. Reversed and remanded. Opinion filed April 4, 1919.

CHARLES H. STOLL, WINSLOW EVANS and ELA, GROVER & MARCH, for plaintiff in error; FRANK R. GROVER, of counsel.

FRANK J. QUINN and JOSEPH A. WEIL, for defendant in error; LEVY MAYER and ALFRED S. AUSTRIAN, of counsel.

MR. JUSTICE CARNES delivered the opinion of the court.

This is another action in assumpsit by the same plaintiff against the same defendant and involving a consideration of the same contract and work done thereunder as *American Spirits Mfg. Co. v. Western Manufacturing & Oil Co.*, 210 Ill. App. 454, where the Spirits Company obtained and held a judgment rendered for services performed for the Oil Company in separating starch from oil, and other ingredients of corn, on proof of a written contract between the parties of February 20, 1897, modified in writing October 19, 1898, and afterwards modified by a course of dealing between the parties for many years. That suit was for

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

services from October, 1914 to August 1, 1915, the last part of the period in which the parties were operating under the provisions of the written contract, and modifications thereof. This suit is based on the claim that during the whole period of about 17 years the work of separating the starch was imperfectly done so that the Spirits Company lost and the Oil Company gained thereby.

During the entire time the Spirits Company was operating a distillery at Peoria, Illinois, producing alcohol spirits or whisky from the starch of corn, which had to be separated from the germ and the husk of the kernel. The starch only was useful for distilling purposes, but oil and feed cake, each of commercial value, were made from the germ and husk. The written contract provided that the Oil Company should take the corn, separate the starch, and return it to the Spirits Company, retaining the other parts of the kernel for its own use and profit. It is agreed that a perfect separation of the starch is not possible with the best of machinery and the best of operation; that inevitably some per cent of the starch will pass into the feed cake, which sold as food for cattle; therefore, it must be presumed that the contract meant and was understood as requiring only such a separation and return of the starch as was practicable. The amount of starch so lost in such processes depends upon the character of the machinery, the method of operation, and the quality of the corn. Even with the best of machinery and operation so much rests on the quality of the corn that it is a matter of estimate; and there is no claim that experts can accurately state what per cent might be reasonably lost during so long a period of operation as we are here considering.

The declaration charged that the Oil Company wrongfully and without the Spirits Company's consent became possessed of 800,000 bushels of starch and starch content, the property of the Spirits Company, and wrongfully applied said property to its own use,

and afterwards promised to pay the Spirits Company the reasonable value of the same. The defendant pleaded the general issue in assumpsit. There was a verdict of $250,000 for the plaintiff, on which judgment was entered, and the Oil Company prosecutes this writ of error.

There is some discussion in the briefs as to the form of the action, whether in tort or assumpsit, and while it is averred in the declaration that the defendant wrongfully took and wrongfully converted the property, we think there is no question that the action is assumpsit, and to be governed by the rules applicable to that form of proceeding. It was so assumed by the Oil Company in its plea of the general issue, and is so assumed here in different expressions in its brief. The gist of the plaintiff's claim is that the defendant had obtained and sold the plaintiff's property, and therefore an implied promise to pay for the same, regardless of the question whether a tort was committed. Counsel for the Oil Company repeatedly state that under the declaration it was imperative that the plaintiff prove a wrongful taking, but they cite no authority. It is said in 21 Encyc. Pl. & Pr. 658: "Where all the elements of a contract are alleged, averments characterizing the conduct of the defendant as fraudulent, negligent, or wrongful, or charging him with conversion, may be rejected as surplusage." And in 5 Corpus Juris 1399: "Matters of aggravation set forth in a count in assumpsit do not change it to a count in tort." We know of no authority supporting counsel's contention that the allegation of wrongful taking required strict proof, and presume if there were any it would have been cited.

On the trial the Spirits Company introduced evidence of the written contracts, the amount of oil obtained by the Oil Company, the amount of feed cake that would ordinarily have resulted in handling corn enough to produce that quantity of oil, the amount of feed cake actually sold by the Oil Company, and that

the excess of cake so shown came from retaining too much starch in the separating process. The Oil Company offered evidence, which was rejected, that the work was not in fact done under the provisions of the written contract; that early in the period it was arranged that the Spirits Company instead of the Oil Company should furnish the machinery and labor to separate the starch, oil and cake, and that thereafter for about 15 years the work was so conducted, the Spirits Company charging a quarter of a cent a bushel for grain mashed; that the officers of the two corporations were to a large extent identical, and the Spirits Company in fact substantially controlled the whole situation, not only furnishing the machinery to do the work, but also to a considerable extent marketing the feed cake and oil; that the machinery used by the Spirits Company in the separation was not proper for that purpose, and different and better machinery should have been procured and used; that all the time from day to day, and month to month, and year to year it was perfectly apparent that the quantity of starch now complained of was being lost to the Spirits Company and gained by the Oil Company in the increased quantity of oil cake sold; that the Spirits Company not only acquiesced in this manner of separation without protest or question during the entire period, but also assumed not only the work but the responsibility of a proper division. Such evidence was repeatedly offered in varying forms, and objections thereto sustained. The Spirits Company undertakes to support the ruling of the court by saying that the evidence rejected was entirely immaterial unless the Oil Company desired to recoup damages of the Spirits Company for not properly performing services it had undertaken to render the Oil Company, and that the Oil Company repeatedly stated it was not proceeding on the theory of recouping such damages.

We think that character of evidence was pertinent. Under the written contracts the Oil Company assumed

a burden to furnish skill, labor and machinery to sep-
arate the starch from the balance of the corn, and to
return the starch to the Spirits Company. That obli-
gation could not, like an obligation to furnish so many
bushels of corn or gallons of liquid, be accurately
measured. Its performance from time to time rested
largely on the consent and acquiescence of the parties.
It was therefore material that frequently during the
time in question the Spirits Company acquiesced in
the separation as then made, and more material that
it for a consideration undertook to relieve the Oil
Company of all discretion and labor in making the di-
vision.

Counsel for the Spirits Company rely on *Devine v.
Edwards*, 87 Ill. 177, a case in which there was a mis-
take in measurement of milk delivered, resulting in
the purchaser's receiving less than his contract re-
quired. The deficiency was capable of certain proof.
It was held that the purchaser might recover damages,
notwithstanding he could with reasonable diligence
have detected the mistake when the milk was deliv-
ered. It was like a case of error in counting money
in which, no doubt, the injured party may have relief
even if the mistake is in part due to his own careless-
ness. If it had been a sale of butter fat and the pur-
chaser had undertaken, even as the agent of the seller,
to separate it, and had for a long time treated the
division so made as a compliance with his contract,
he could hardly be heard to say years afterwards that
he might have used different appliances and obtained
more fat and was entitled to recover for the loss of
what he had permitted to escape into the skimmed
milk. That he would have no standing in court to
make such claim we think appears in *Noble v. Illinois
Cent. R. Co.*, 111 Ill. 437, an opinion written by the
same judge of the Supreme Court, with no indication
that it was regarded in conflict or inconsistent with
anything said in the *Devine* case *supra*. The defend-
ant had the right to remove gravel from the plaintiff's

property, but had no right to take sand. All gravel deposits contain some sand, and sand deposits contain some gravel, so that it might become a matter of opinion whether a load removed from the premises should be classified as sand or gravel. It was held that the plaintiff by assisting in the removal of the material, and so treating it as gravel and failing to make any objection to the work, gave a construction to the contract. If he intended to object that it was sand instead of gravel he should have done it then; that "His silence, under the circumstances, was a recognition of the rightfulness of defendant's construction of the provisions of the deed. By acquiescing in the removal of the gravel from his land, and assisting therein, he, at least by necessary implication, licensed what was done, with his consent"; that not having objected at the time the work was done, the defendant and its servants were justified in assuming that they were proceeding rightfully, or at least with the plaintiff's consent. This case has not been cited since on that point in our reported decisions. The principle is there announced without citation of authority, and it may be too plain to require any. Counsel for the Spirits Company say that the case is not authority here because it was an action in tort, and the plaintiff, having assisted in removing the gravel, could not say it was wrongfully taken. The decision is not placed on that ground, but distinctly rests on the fact that plaintiff, having acquiesced in the defendant's claim that the material removed was gravel, was estopped to afterwards claim it was sand. In the *Devine* case, *supra,* there was a definite contract as to quantity of milk and a definite deficiency of delivery, easily ascertained. It did not differ in principle from an agreement to pay $100 and a payment instead of $90. If it had been an agreement to deliver day by day sufficient milk for the defendant's baby, and there had been delivered more than the amount so required, the parties would, by continued course of dealing, have put a construction

on the contract as to the quantity of milk called for that they could not afterwards dispute. Or even had it been a contract for the delivery of a quart of milk a day, and the purchaser had been the daughter of the seller and had received for months and years more milk each day, paying only for one quart, it would have been apparent that the father intended a large measure, and intended a gift of the surplus. He would not have been permitted at the end of a 15-year period when he might become estranged from his child to sue and recover for the surplus of milk so delivered. That parties become bound in certain construction of a contract by long and continued course of dealing is a principle relied on, citing authorities, in our decision of the former case. (210 Ill. App. 454.) The reasoning and authorities cited there apply here. In the present case, as we have seen, there was no way of definitely measuring the starch that from time to time under the best of operation should pass into the feed cake. There might be a difference of opinion whether more than a reasonable amount was so passing. The Spirits Company itself made the separation, which meant at least that it was thoroughly informed all the time of what was done. It was under the same obligation to object if it thought it was losing too much starch as was the plaintiff in the *Noble* case, *supra*, to object if he thought he was losing too much sand. For some reason, which the record does not disclose, and which is not very material, it not only acquiesced in but practically directed the manner of separation and the quantity of starch that should pass into the feed cake for a great number of years. It should not now be permitted to complain.

It follows that in our opinion the court erred in rulings on evidence and instructions that should have conformed to the law as above indicated. The record is voluminous. The Oil Company in its endeavors to support its theory of the case offered much evidence that would not have been necessary had the court

620    APPELLATE COURTS OF ILLINOIS.

Am. Spirits Mfg. Co. v. Western Mfg. and Oil Co., 213 Ill. App. 612.

adopted its view of the case and permitted evidence thereunder. Some of it was incompetent for other reasons. We do not think it necessary to extend this opinion by discussing those various items of evidence and determining as to each whether it would have been competent and necessary if the trial court had acted on the law as we now hold it. Another trial based on the law so held should relieve the record of substantial errors here complained of in rulings on the evidence and instructions to the jury.

The Oil Company insists that the measure of damages, if any, was the market value of the starch, which it obtained, and not the increased value of its feed cake; and that as there is no evidence as to the market value of the starch, there is no basis for a substantial verdict. The Spirits Company answers that it was not trying to recover for the market value of the starch but was suing for the money that the defendant received by wrongfully taking and selling its property. Assuming that a defendant is liable in assumpsit for money obtained from the wrongful sale of the plaintiff's goods, still, it is not clear that the facts of this case bring it within that rule. The defendant did not take the plaintiff's starch and convert it into money as a separate transaction so that it could be definitely known what it obtained for it. The starch was added to the feed cake increasing the weight of that article. Whether the feed cake sold for as much or more per pound because of the addition of more starch than would ordinarily be expected does not appear. Counsel for the Oil Company say they were prepared to prove that their client lost money by an extra quantity of starch going into the feed cake; that it diminished the quantity of oil obtained in the separation, losing more thereby than was gained on the cake. If the Spirits Company had wrongfully got possession of starch that belonged to the Oil Company and converted it into whisky, it would hardly occur to any one that the measure of damages would be the increased

selling price of the whisky produced by the Spirits Company. We are inclined to the opinion that the evidence of value was not of a character to warrant the verdict.

Error is assigned and argued on numerous other occurrences of the trial. There was a conflict between the court and counsel giving rise to much confusion. A part of the misunderstanding arose from the position of the president of the Oil Company assuming that he had the right to appear and conduct the defense, not as an attorney, but as a party to the action. Whether he had the right is a question not much argued by counsel, and not very material. During the trial the Oil Company asked leave to introduce another attorney, which was denied. It also asked leave to file a plea of the statute of limitations, which was denied. As the judgment is reversed here for other reasons, we deem it unnecessary to decide whether the court erred in those rulings. There is no reason why other attorneys may not be permitted to act for the Oil Company on another trial, or why it may not be permitted to file a plea of the statute of limitations before the case is again called for hearing. It is not very important whether the president of the Oil Company appears in the next trial as an attorney for the defendant or as its president. We presume if objection is then made to his appearance as the president he will be prepared to enlighten the court by citation of authority on the right of the president of a corporation to appear in a litigation in that character only; and, failing to find such authority, necessary arrangements can be made for counsel to defend the action.

For the reasons above indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE NIEHAUS took no part.