FERRIS A. M. GIBBS

*v.*

THE PEOPLE'S NATIONAL BANK OF CLAREMONT.

*Opinion filed October 25, 1902.*

1. CONTRACTS—*rules of construction do not apply if intention is clear.* If an ambiguity appears in a contract and the intention is not clear, rules of construction are useful; but if a clear intention appears from the face of the instrument they do not apply.

2. SAME—*offer to sell property construed.* An offer to sell property for $7000 "net," exclusive of "all commissions, taxes and all other charges that may stand against the property," does not bind the owner to accept $7000, with the amount of taxes and commissions added but leaving a special assessment lien to be paid by him.

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This is an appeal from a decree of the superior court of Cook county dismissing a bill for specific performance

filed by appellant to compel appellee to convey to him the legal title to certain lots situated in Wilmette, Cook county, Illinois.

It appears from the bill that appellee, a national bank doing business at Claremont, New Hampshire, was the owner of the lots in controversy, and in 1898 placed them in the hands of Edwin M. Clark, a real estate agent in Chicago, for sale; that in October, 1901, an offer of $6000 cash was made for the lots by the appellant and shortly thereafter refused by appellee, with the suggestion to Mr. Clark, "If you have a party who would offer $7000 cash for this property the offer would be worthy to submit to my directors; any figure under this would be useless;" that on November 11, 1901, appellant made an offer to Clark of $7000 cash, which offer was by him submitted to appellee; that on November 19, 1901, appellee caused the following letter to be written:

"E. M. Clark, Esq., Chicago, Ill.:     "November 19, 1901.

"Dear Sir—I fulfilled my promise as stated in my last letter, namely, that I would present to my directors your client's offer of $7000 cash for the Wilmette property which the bank owns, and I now report to you the action that my directors took upon this proposition. It is doubtless useless to write the same, because you say your party states that he will pay $7000 and not a cent more, but I will give you the proposition as delivered by my directors, and you can present it to him or not, as you think best.

"It was voted that if we could realize, net, $7000 for the Wilmette property on or before January 1 next, that we would sell the same. This means that we are to receive $7000 free of all commissions. taxes and all other charges that may stand against the property. By this I mean that he would assume all taxes that have accrued for this year, also pay your commission, and make a settlement, if any is needed, with Messrs. Lyman & Patton, and with Mr. Patterson, in whose hands the property has been for sale. The records will show that there are no back taxes due, but there will be some taxes to pay on January 1, and my directors' decision contemplates that the purchaser will assume these.

"We took this property in December, 1897, and it cost us $6243. We have never charged any interest to the account,

but the charges in the way of assessment and taxes for improvements upon the property has carried the price up so that it now stands us something over $9400. So you see that selling at $7000 we would be losing, then, something over $2400, saying nothing about the interest on our money.

"My directors will not be disappointed if you do not take the property, as about half of them are opposed to selling it at this price anyway, and we all feel that there is going to be a time soon now when all that shore property is going to be of much greater value. But of this you ought to be a better judge than we, and you can also judge whether it will be worth while to submit the proposition that I have made, to your client.

"Yours truly,    GEO. A. TENNEY, *Cashier.*"

—that the contents thereof were made known to appellant, and he, upon investigation, ascertained that all commissions, including a settlement with Lyman & Patton and Mr. Patterson, would be $350; that on November 25 he caused the sum of $100 to be paid to Clark and took his receipt therefor, in the following form:

*"Nov. 25, 1901.*

"Received of Ferris A. M. Gibbs the sum of one hundred ($100) dollars as part pay toward the purchase of lots three (3) to ten (10), both inclusive, and thirteen (13) to eighteen (18), both inclusive, in block seven (7), in L. L. Greenleaf's re-subdivision of blocks twenty-nine (29) to thirty-four (34), Wilmette village, being three hundred feet south front on Lake avenue and four hundred feet north front on Forest avenue, between Twelfth and Thirteenth streets, Wilmette, for the price of seventy-three hundred and fifty ($7350) dollars, subject only to the general taxes levied after the year 1900.

EDWIN M. CLARK, *Agent.*"

Mr. Clark, on giving the above receipt, notified the appellee that the deal had been closed upon its terms. Appellee had, at a meeting of its board of directors on November 25, 1901, before being notified of the sale, decided to withdraw its offer above set out, and its cashier, on the afternoon of that day, telegraphed Mr. Clark to that effect, and followed the telegram by a letter of withdrawal. When appellee received the notification from its agent of the acceptance of its offer, its cashier,

Mr. Tenney, at once went to Chicago for the purpose of investigating the sale, and while there the receipt above set out was filed for record in the recorder's office of Cook county by the appellant, it not appearing that the appellee was familiar with the contents thereof; that Mr. Tenney shortly returned to New Hampshire, and on December 3, 1901, the following letter was written by him to Mr. Clark:

"*E. M. Clark, Esq., Chicago, Ill.:*                "*Dec. 3, 1901.*

"DEAR SIR—At the meeting of the board of directors, held on Monday last, it was decided to let our Wilmette property go at $7000 net, as per my letter of November 19, and we have authorized Lyman & Patton, of Chicago, to cause to be executed a contract of said sale, which same will embrace the conditions under which said sale was made, and upon the signing of which we will be ready to go ahead with our part of the transaction. You will doubtless receive due notice from Messrs. Lyman & Patton to this effect.      "Yours truly,

GEO. A. TENNEY, *Cashier.*"

On receipt of this letter Messrs. Lyman & Patton delivered the abstract of title to appellant, who caused the same to be brought down to date, from which it appeared there were unpaid special assessments amounting to $1463.14, which were a lien upon said premises; that appellant refused to take said lots subject to said special assessments and appellee declined to pay them out of the purchase price; that during the month of December appellant tendered to appellee the sum of $7250 and demanded a deed to the premises, and appellee refused to accept the tender or do anything further in the matter, whereupon appellant filed his bill for specific performance. Appellee appeared and filed a general demurrer to the bill, which was sustained by the chancellor, and a decree entered dismissing the bill for want of equity.

WILLIAM S. FREEMAN, (EDWIN BURRITT SMITH, of counsel,) for appellant.

LYMAN, BUSBY & LYMAN, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

The only question for determination in this case is, did the appellant comply with the terms of the offer of appellee, and thereby become entitled to a deed to the premises in controversy, disincumbered of the lien of the special assessments? A decision of this question necessitates an examination of the offer made by appellee, as set out in its letter of November 19, 1901, to its agent, Clark, and by him submitted to appellant, for the purpose of ascertaining the intention of appellee as therein expressed. That the letter must be examined as a whole and effect given to the intention as expressed by the entire instrument, and not to certain provisions to the exclusion of others, is elementary. (*Hayes* v. *O'Brien*, 149 Ill. 403; *Street* v. *Chicago Wharfing and Storage Co.* 157 id. 605.)

We have carefully examined this offer and considered the same in the light of the authorities cited by counsel, and arrived at the conclusion that considering the entire instrument, and construing all provisions together, the clear intention expressed by appellee in its offer is, that it, in consideration of the sum of $7000 net, would deed the premises to appellee, he to take the same subject to all existing encumbrances and liens and to pay all commissions and expenses of the transaction. That it was to receive $7000 net is reiterated in its letter of December 3, 1901. The consideration being $7000 net, it follows, if the word "net" be construed as being used to express its ordinary, common and usual meaning, as is the rule where it does not appear that it was used in any other or peculiar sense, (*Royal Templars* v. *Curd*, 111 Ill. 284; *Schneider* v. *Turner*, 130 id. 28;) it excludes the appellant's theory that out of the $7000 net certain special assessments were to be paid. The word "net" is defined by the Century Dictionary and Cyclopedia as "clear of anything extraneous, with all deductions (such as charges, ex-

penses, discounts, commissions, taxes, etc.,) made;" and the American and English Encyclopedia of Law, (vol. 16 —1st ed.—p. 487,) "after deductions made; clear of all charges; free from expenses." Further definitions are unnecessary. That the above express the word's well known and usual meaning cannot be denied, and that it would be $5536.86 net, and not $7000 net, that appellee would receive if appellant's contention was sustained is too plain to admit of argument.

The rules of construction insisted upon by appellant are good law, but they can only be used to assist in arriving at the intention of appellee,—not to force a new and different meaning into its offer. Where an ambiguity appears and the intention is not clear, rules of construction are useful, but where a clear intention appears on the face of the instrument they do not apply. *Stettauer* v. *Hamlin*, 97 Ill. 312.

Appellant urges that the word "taxes," used in the offer, does not include special assessments. The person writing the letter was a resident of another State,—a business man, not a lawyer,—and cannot be held to the strict meaning of legal or technical terms, where it clearly appears that he did not intend so to use them, as it does here. In the following paragraph in the offer he uses the words "assessment and taxes for improvements," showing that he used "taxes" in the same sense as "assessments." In addition, it can be said that the qualifying sentence relied upon by appellee in no way refers to the "other charges" in the offer mentioned, which would certainly include special assessments or any other charge against the lots. As was said in the case of *Field* v. *Leiter*, 118 Ill. 17 (p. 26): "Greater regard is to be had to the clear intent, when ascertained, than to any particular words which may have been used in the expression of that intent." "The rule is that the intention of the parties must govern, but that the intention is not to be sought merely in the apparent meaning of the language used,

but that the meaning of this language may be enlarged or limited according to the true intent of the parties, as made manifest by the various provisions of the contract considered as a whole." (*Street* v. *Chicago Wharfing and Storage Co. supra.*)   We do not think that the offer shows any intention of appellee to pay the special assessments.

It appearing that appellant did not accept the offer of appellee as made, he was not entitled to the relief prayed for, and the chancellor properly sustained the demurrer and dismissed the bill.

The decree of the superior court will be affirmed.

*Decree affirmed.*