(No. 10583.)

SHOLL BROS., Defendants in Error, *vs.* THE PEORIA AND PEKIN UNION RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed December 21, 1916.*

1. CONTRACTS—*when construction placed by parties on contract should be considered.* The construction which the parties themselves have placed upon a contract cannot avail where its terms are plain and the meaning unambiguous, but where there is an ambiguity the practical construction placed upon the contract by the parties, as shown by their acceptance of and acts under the contract, should be considered by the court and upheld if not contrary to public policy.

2. SAME—*when coal company may enjoin railroad from hauling coal of another mine over its premises.* Under a contract between a coal company and a railroad for the joint construction and maintenance of a track extending over the property of the coal company from the main line of the railroad to the coal mine, giving the railroad company the "right to use said right of way and tracks in handling the business of or for the purpose of making connections with any other industry, except coal mine, that may hereafter be located adjacent to said right of way or reached from said right of way," the railroad company may be enjoined from hauling over this right of way coal of another mine adjacent to its main track, where the evidence shows the parties had for many years placed such a construction upon the words "reached from said right of way."

3. SAME—*what contract monopolizing use of side-track of railroad is not against public policy.* Under a contract between a coal company and a railroad company for the joint construction and maintenance of a side-track over a private right of way owned by the coal company, the track does not become a part of the public railway of the railroad company and is therefore not a public highway under section 12 of article 11 of the constitution, and the right of the railroad company to transport coal thereon may be limited and governed by the contract without violating public policy.

DUNN, CARTER and DUNCAN, JJ., dissenting.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Peoria county; the Hon. J. M. NIEHAUS, Judge, presiding.

FRANK T. MILLER, and JOHN M. ELLIOTT, (STEVENS, MILLER & ELLIOTT, of counsel,) for plaintiff in error.

FRANK J. QUINN, (QUINN & QUINN, CHARLES V. O'HERN, and JOHN DOUGHERTY, of counsel,) for defendants in error.

P. J. LUCEY, Attorney General, and LESTER H. STRAWN, as *amici curiæ,* for the People.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

This case has been brought to this court by writ of *certiorari* issued to review the judgment of the Appellate Court for the Second District which affirmed a decree of the circuit court of Peoria county enjoining the plaintiff in error, the Peoria and Pekin Union Railway Company, from moving on or over tracks located on a certain right of way described in the decree, any coal or coal mine products not mined and produced on the lands or by virtue of the coal and mineral rights of Sholl Bros., the defendants in error. The cause was heard upon pleadings and evidence, but there is no disputed question of fact.

The plaintiff in error is a railroad corporation and has operated a railway between the cities of Peoria and Pekin since the year 1880. Sholl Bros. is a co-partnership, which at the time of making the contract with plaintiff in error hereinafter mentioned was, and since then has been, engaged in the business of mining coal. In 1896 they were the owners of coal lands near Bartonville, on the west side of the right of way of the plaintiff in error and about three-quarters of a mile away. The coal lay in a hill which rose very abruptly 100 to 150 feet above the level of the railway. On July 16, 1896, the railway company entered into a contract in writing with Sholl Bros. whereby it agreed to put in a side-track for them from its main track to their

coal mine near Bartonville about to be opened and operated by them. By the terms of the contract it was agreed that Sholl Bros. should furnish the right of way, grading and bridging from the main track to the mine, do all the grading and bridging necessary for the track at the mine, and pay $300 as their proportion of the first cost of the ties to be used in constructing such side-track. The railway company agreed to furnish the balance of the ties and other material necessary for laying the side-track and necessary mine tracks and to maintain such tracks at its own expense. The contract contained the following stipulation: "In consideration of so doing the said first party [the railway company] is to have at all times exclusive use of said tracks and right of way. It shall also have the right to use said right of way and tracks in handling the business of or for the purpose of making connections with any other industry, except coal mine, that may hereafter be located adjacent to said right of way or reached from said right of way, provided said first party shall always do such other business in a manner which shall not interfere with said second party." The contract was to extend for twenty-five years from its date and thereafter until either party gave sixty days' notice of its desire to terminate it. Sholl Bros. secured the right of way, constructed the grade, built bridges and performed their part of the contract at an expense to them of upwards of $30,000 and the railway company built the track. There were then no other mines in operation adjacent to the said right of way, and there is now no other coal mine reached by it except the Collier's Co-operative Coal Mine, owned by James M. Sholl. There was no railroad running near the mines of the defendants in error, which were situated in a ravine which was not very accessible. The right of way was over the most accessible route and furnished the only means of marketing the coal from those lands by railroad tracks. There were no industries other than the Sholl Bros.' mine adjacent to or reached by this right of

way at the time of its construction. Before this track was
laid a site for a State asylum for the insane had been chosen
just beyond the land of defendants in error, and afterwards
the Asylum for the Incurable Insane at Bartonville was es-
tablished by the State on the site. chosen, adjoining the
property of Sholl Bros. The commissioners of the asylum
constructed railway tracks on the asylum grounds which
they connected with the track on Sholl Bros.' land, and the
latter track has since been used for the transportation of
freight to the asylum. The defendants in error furnished
coal to the asylum, which was delivered over the track in
question, and in some instances coal was delivered to the
asylum which was produced at some mine other than that
of the defendants in error. In each case of such delivery
the plaintiff in error requested and received from the de-
fendants in error special permission to move the coal over
the Sholl Bros.' track to the asylum, and this practice con-
tinued uniformly until 1911, when the railway company is-
sued a tariff showing a rate for the delivery of coal over
the track in question to the asylum and announced that
such service was open to all persons who might demand it.
Afterward the railway company did deliver over said track
to the asylum cars loaded with coal from mines other than
those on the lands of the defendants in error, one of such
mines being that of the Wolschlag Co-operative Coal Com-
pany, located on the main line of plaintiff in error. There-
upon the defendants in error filed the bill in this case and
secured an injunction against the transportation over such
track and right of way of coal not mined on their lands or
under their coal rights.

The principal controversy is over the proper construc-
tion and meaning of the contract, and in particular the
clause hereinbefore set out. The principal assignments of
error are to the effect that the circuit and Appellate Courts
erred in construing the contract in question contrary to its
clear and unambiguous provisions; that the court erred in

not finding and decreeing that the practical construction given said contract by the parties was against its clear, positive and unambiguous provisions and was void as against public policy. It is the contention of plaintiff in error that the contract by its plain terms gave the railway company the right to serve all industries, except coal mines, that might after the making of the contract be located adjacent to the switch track in question or reached by a connection therefrom, and it is the contention of the defendants in error that by the terms of the contract coal mines, generally, are excepted from the industries whose business plaintiff in error could handle or make connections with, and that plaintiff in error is precluded by the terms of the contract from transporting any coal over the track except the coal from the mines of Sholl Bros.

It is only necessary to refer to the interpretation and construction of the contract as contended for by the respective parties. Does it mean, as insisted by plaintiff in error, that the railway company has the right to use said right of way and tracks in handling the business of any other industry, except a coal mine, that might after the making of the contract be located adjacent to the right of way? Or does it mean that the railway company has the right to use said right of way and tracks in handling the business of or for the purpose of making connections with any other industry, except any coal mine, wherever situated, or any coal mine that might after the making of the contract either be located adjacent to said right of way or that could be reached therefrom or by means thereof? It must be remembered in this connection that the railway company does not own this right of way. The fee in the land and right of way is owned by the defendants in error, and the right of the railway company to use the tracks and right of way is restricted to whatever rights it has by the terms of the contract.

It is true, as a matter of law, that the construction of the parties themselves of a contract cannot avail in construing the contract where its terms are plain and the meaning clear and unambiguous, (*Gibbs* v. *People's Nat. Bank,* 198 Ill. 307,) but where there is an ambiguity in the contract and the intention is not clear, rules of construction are useful. As stated in *Slack* v. *Knox,* 213 Ill. 190: "It is permissible in construing a contract to look to the interpretation that the parties thereto have placed thereon, in its performance, for assistance in ascertaining its true meaning. 'No extrinsic aid can be more valuable.'—*Vermont Street M. E. Church* v. *Brose,* 104 Ill. 206; *Storey* v. *Storey,* 125 id. 608." The reason and wisdom of this rule are apparent from the definition of the word "contract," which is an agreement or a meeting of the minds of the parties thereto. The parties themselves are supposed to know best what they meant, and if, in reducing such agreement to writing, words or terms have been used that render the contract ambiguous or uncertain as to its true meaning, the construction by the parties thereto, as shown by their acceptance and acts thereunder, cannot help but be of value in ascertaining the true intent and meaning of such contract if it becomes necessary for the court to consider the situation and surroundings of the parties or put itself in the place of the parties at the time of entering into the contract, and such construction should be upheld by the courts.

We are unable to say that the contract in question is so perfectly clear and unambiguous as to leave no question as to its meaning and the intent that existed in the minds of the respective parties when the contract was entered into. We have been furnished with plausible and reasonable arguments of counsel for the respective parties in support of their contentions and each side has invoked the consideration of extrinsic circumstances. The ambiguity is contained in the sentence: "It [the railway company] shall also have the right to use said right of way and tracks in

handling the business of or for the purpose of making connections with any other industry, except coal mine, that may hereafter be located adjacent to said right of way or reached from said right of way, provided said first party shall always do such other business in a manner which shall not interfere with said second party." To sustain the contention of plaintiff in error it would be necessary to disregard the words "or reached from said right of way," as it is the principal contention of plaintiff in error that it is only prohibited from handling coal from a mine that might after the making of the contract be located adjacent to or reached immediately from said right of way, and is not prohibited from hauling coal from mines that are located along the main line or coal that is shipped in from other roads reached by the main line, although such products, in being hauled over the track in question and delivered to the State asylum, are reached from said right of way and tracks in question or by means thereof. If this contention is to be sustained, then plaintiff in error is to be allowed to haul coal in from its main line on said track but cannot haul any out except it be the product of defendants in error's mines. From the entire contract and the surroundings and situation of the parties when the contract was made, it is apparent that it was the intention of the parties that defendants in error were to have a monopoly of the use of said track, so far as coal mine products were concerned, in return for the large amount of money they expended in its construction, and plaintiff in error was to have exclusive use of the track, or a monopoly of its use, for all other purposes except a coal mine. Circumstances might arise, and in fact have arisen owing to the location and construction of the asylum, by reason of which it would make no difference to defendants in error, as far as interfering with their monopoly is concerned, whether the coal hauled over the track would come from a mine adjacent thereto or a mine adjacent to the main line of the plaintiff

276 — 18

in error's road, or by means of a connection from the main line and the track in question. It is shown by the evidence, and not disputed, that for many years after the contract was made and the track used, and after the insane asylum was occupied, the officers of plaintiff in error refused shipments of coal over said track from any mine except that of defendants in error without their consent, thus showing their construction of the contract. This construction and interpretation of the contract by the parties thereto must now be considered, and we think, under the circumstances, must be upheld as the proper construction and meaning thereof.

Plaintiff in error also contends that such a construction of the contract would be contrary to public policy and void, for the reason that railroad companies, being *quasi* public corporations created. for the purpose of performing the duties of common carriers, have no right to contract with a corporation or individual to give exclusive right to transfer any commodity over any part of their lines. The case of *Louisville and Nashville Railway Co.* v. *P. and K. Coal Co.* 111 Ky. 960, (55 L. R. A. 601,) is cited as authority. This contention is also based on the duty of the plaintiff in error as a public railroad, under the constitution and laws of this State, to serve the public and receive freight from all persons who may desire to transport same. The distinction between the case cited and other cases of similar import and the case at bar is, that in those cases the railroads in question were held to be in effect, or actually were, public roads and owned and operated by common carriers. It is true that a railroad corporation cannot make a valid contract limiting the use of its tracks, which are declared to be public highways by section 12 of article 11 of the constitution. But that is not this case. The side-track involved in this case is not a part of the public railway of plaintiff in error. It is connected with said railway but not a part of it, and could not become a part of the rail-

way system of plaintiff in error unless it be purchased or acquired by condemnation proceedings. As hereinbefore pointed out, the right of way on which the track was built is the private property of defendants in error, and the right of the railway company therein is limited and governed by the provision of the contract that has been considered.

A case in point and which arose under similar circumstances is that of *Koelle* v. *Knecht*, 99 Ill. 396. In that case the owners of a coal mine located some distance from the right of way of a railroad contracted with the railroad company to run a switch track to the mine. To carry out this purpose the mine owners bought part of the right of way, where the road was not built on their own land, from intermediate land owners, made the bridges and prepared the grade ready to receive the ties and rails. By contract the railroad company put in place the ties and rails. It was held in that case that a railroad to coal lands which is not owned by the railroad company but by individuals for their own private use is not a public highway within the meaning of section 12 of article 11 of the constitution, and therefore is not free to all persons for the transportation of their persons and property thereon. That section applies only to public railroads. It was said on page 404 of the opinion: "It would work monstrous wrong and injustice to compel an individual who had constructed a railroad across his farm to assume the duties and liabilities of a common carrier against his will and transport over his road all commodities that the adjoining land owner or his neighbors might require. Those who made that instrument did not intend to impose such duties and liabilities on private individuals against their will. It was only public railroads they intended to regulate, and this switch is not of that character." What is said in that case applies to the case at bar. In *Litchfield and Madison Railway Co.* v. *People*, 222 Ill. 242, the distinction between public railroads and railroads built for private use, in their duty to serve the pub-

lic, was pointed out. It was there held that under section 12 of article 11 of the constitution, and section 84 of the Railroad act, all railroad corporations incorporated under the general Railroad Incorporation law must engage in carrying both passengers and freight, and cannot engage exclusively in carrying freight except in case of a railroad built by individuals upon their own land for private use or of a railroad built exclusively to afford terminal facilities within or in the vicinity of a large city.

It would doubtless be of advantage to the State to be allowed to ship coal over this side-track to the asylum, but there is nothing in the circumstances of this case which gives the State any greater rights than an individual would have similarly situated.

For the reasons given the judgment of the Appellate Court will be affirmed.          *Judgment affirmed.*

DUNN, CARTER and DUNCAN, JJ., dissenting:

The contract gave the plaintiff in error the right to use the right of way and tracks in handling the business of any other industry that might thereafter be located adjacent to said right of way or reached from said right of way except coal mine. The majority opinion sustains the contention of the defendants in error that the effect of this exception was to exclude the plaintiff in error from the right to transport any coal over the tracks except the coal of Sholl Bros. The uniform practice of the plaintiff in error in refusing for many years to transport any other coal than that of Sholl Bros. except with their consent is regarded as a practical construction of the contract by the parties which should be adopted. Evidence of the practical construction of doubtful provisions in a contract between parties may be of assistance in arriving at their meaning but cannot control the plain legal effect of the language used. It is subject to the same rule which applies to cases of contemporaneous construction of constitutional and legislative provisions.

Such construction will have no weight when the provisions are clear and unambiguous. (*Whittemore* v. *People*, 227 Ill. 453.) Where an ambiguity appears and the intention is not clear, rules of construction are useful, but where a clear intention appears on the face of the instrument they do not apply. (*Gibbs* v. *People's Nat. Bank*, 198 Ill. 307.) The language of the clause in question is clear and unambiguous. The railroad company is to have at all times exclusive use of the tracks and right of way,—that is, no other person or corporation is to have the right to use them. Certain purposes for which it may use the right of way and tracks are stated. These are the handling of the business of or making connection with certain industries. The industries intended are specified, and are those that might thereafter be located adjacent to or reached from the right of way. From such industries there was one exception,— a coal mine. The exception is from the class of industries with which the railroad company was authorized to connect and whose business it was authorized to handle,—that is, industries adjacent to or reached from the right of way. It was only with industries so situated that the clause purported to deal, and the coal mine was one of them. Such industries were the subject matter of the clause, and with all such industries, except coal mines, the railroad company might connect, but it could not connect with or handle the business of a coal mine so situated, though without the exception it might have done so. The authority to connect with and handle the business of all industries adjacent to or reached from the right of way was broad enough to include a coal mine, and the exception was inserted to exclude coal mines so situated.

The defendants in error expended many thousands of dollars in procuring the construction of this track, which gave an outlet to their mine. There was no other mine or other industry adjacent to the proposed right of way or reached from it. There is no other now so far as the evi-

dence discloses, and the testimony is that it was a difficult undertaking to build the railroad track; that rock had to be excavated on a hill side, and the land was not available for any other purpose than a right of way. About the time the contract with plaintiff in error was entered into, the Sholls purchased more coal land accessible to this track and still have about four or five hundred acres of such land. There are several thousand acres of coal land belonging to other people accessible to this track from which there is no way to get out or connect with the railroad of the plaintiff in error except by going through this hollow and ravine and over this track. At the date of the contract the asylum for the incurable insane had not been constructed at Bartonville.

The purpose of the provision is manifest. The object of the contract was to furnish an outlet for Sholl Bros.' coal and preserve to them the monopoly of that outlet. The language was adapted to that purpose. Under this contract the coal underlying the hill cannot be brought out over this track. The plaintiff in error cannot carry coal from a mine adjacent to this right of way or connect the tracks on such right of way with a mine. It is not, however, prohibited from carrying coal or other freight to any other industry or business.

The fact that for many years the plaintiff in error recognized the claim of the defendants in error to a monopoly of the coal-carrying privilege does not change their rights under the contract. If the language of the contract were ambiguous such recognition might assist in arriving at the meaning; but if the meaning is clear and not ambiguous or uncertain, the action of the parties cannot render it uncertain and require the court to declare the contract to mean what the language clearly does not mean.