South Porto Rico Sugar Co., Plaintiff and Appellee, *v.* Public Service Commission of Puerto Rico et al., Defendants and Appellants.

No. 6976.   Argued December 8, 1936.—Decided April 30, 1937.

B.  *Fernández García, Attorney General,* and *T. Torres Pérez, Assistant Attorney General,* for appellant Public Service Commission; *Pedro M. Porrata* for appellants Juan Torruella and Juan Flores. *F. Manuel Toro* and *R. Castro Fernández* for · appellee.

Mr. Justice Córdova Dávila delivered the opinion of the court.

This is an appeal from a judgment of the District Court of San Juan, reversing an order of the Public Service Commission of Puerto Rico. The order reversed directed the American Railroad Co. of P. R. to permit Juan Torruella

Cortada and Juan Flores to use a proportional part of the "Tenerías," to the extent of three cars by paying one-fourth of the original cost of this siding, and one-fourth of the annual cost of maintaining the same.

On September 17, 1908, the Guánica Central constructed said siding at its expense on property belonging to it, and connected the same with the Barrancas spur, which in turn connects with the main track of The American Railroad Co. of P. R. Since that time the Guánica Central and his successor in interest, the South P. R. Sugar Co., have been using the said siding uninterruptedly and exclusively for the shipping of its cane and that of its colonos, and paying the expenses of maintaining said siding.

On February 20, 1933, the appellants-interveners filed a complaint before the Public Service Commission requesting to be permitted to use said siding, under the provisions of subdivision (n) of section 3 of the Public Service Act of Puerto Rico, Act No. 70 of 1917 (Session Laws, vol. II, p. 432). They alleged that the main track of The American Railroad Co. of P. R. is connected with the Barrancas spur which in turn connects with the siding; that the complainants own certain lands planted with sugar cane contiguous to the siding, those of Juan Torruellas producing 2,500 tons of cane and those of Juan Flores 300 tons more or less, which canes are ground at the Central Mercedita, and that due to its location, the Tenerías siding is the only one offering facilities for the shipping of the canes of said complainants; that the respondents, The American Railroad Co. of P. R. and South P. R. Sugar Co., have refused to permit complainants to participate in the use of said siding, in spite of the fact that the latter are willing to pay in accordance with the pertinent provisions of the Public Service Act of 1917; that if their request is denied, complainants would be compelled to transport their canes in ox-carts to sidings situated at a greater distance, thereby losing a sum of money which would

amount to not less than 75 cents per ton and suffering a loss in the yield of the cane.

The American Railroad Co. of P. R. answered and alleged that it had no special interest in the matter and was willing to abide by any decision rendered thereon by the Public Service Commission.

The South P. R. Sugar Co. denied the essential averments of the complaint and set up that the Tenerías siding was constructed by its predecessor in interest in the year 1909, on land which now belongs exclusively to the respondent, and that access to said siding is impossible without going on said private land; that the Public Service Commission had no power to grant to third persons participation in the use of a private siding constructed before the enactment of the Public Service Law or to grant a servitude of right of way over the private land on which the siding is constructed.

The Public Service Commission, after hearing the parties, ordered The American Railroad Co. of P. R. to permit the complainants to use a proportional part of said siding to the extent of three cars, provided the latter paid one-fourth of the original cost of the siding and a one-fourth of the annual cost of maintaining the same, and also ordered that if the South P. R. Sugar Co. refused to permit the use of the strip of land dedicated exclusively to said siding, the said railroad company should stop rendering service to said corporation at the siding and to disconnect the same from its main track.

Feeling aggrieved by that decision, the South Porto Rico Sugar Co. appealed to the District Court of San Juan. Said court, after hearing the parties, reversed the decision appealed from, based on the fact that as it was proved that in order to reach the siding it was necessary to go on land belonging to the South Porto Rico Sugar Co., the commission had no power to grant to the complainants a participation in the use of the same nor to compel the South Porto Rico Sugar Co. to permit private persons to cross its land to reach

the siding, without compensation or eminent domain proceedings, as this would be equivalent to deprive it of its property without due process of law.

We will discuss the questions raised in the briefs without adhering strictly to the order in which the assignments of error are made, for the latter are somewhat confused and under this plea of discussion it will be easier for us to extract the essential points and decide them in the course of this opinion.

■ Appellee claims that the Public Service Commission can not grant to third persons participation in the use of a siding constructed on private land and connected with the track of a public railroad, if said siding was constructed and connected prior to the enactment of the Public Service Law of 1917.

Subdivision (n) of section 3 of said Public Service Law of 1917 provides by whom and under what conditions a public railroad may be requested to connect a private siding with its main track or with any private spur or siding connected with its main track. The law also provides that whenever a private siding has been "so connected" with a public railroad, any person shall be entitled to connect therewith upon payment of a reasonable proportion of the original cost and of the annual cost of maintenance of the siding, and in case of disagreement among the parties, the Public Service Commission, after hearing the parties, shall fix the amount to be paid. We transcribe below subdivision (n) of the cited section.

"*Construction of Connection by Railroads.*—If a railroad company, upon application of any owner or operator of any lateral railroad or any private side track, or of any shipper, tendering property or traffic for transportation, or of any consignee, to construct, maintain, and operate, at a reasonable place and upon reasonable terms, a switch connection with any such lateral railroad or private side track which may be constructed to connect with its railroad, where such connection may be reasonably practicable and

can be put in with safety, and will furnish sufficient business to justify the construction and maintenance of the same; *Provided,* That whenever any lateral line of railroad or private side track has been so connected with a line of any railroad, or whenever any owner of such lateral railroad or any private side track at any time sold or leased, or shall hereafter sell or lease, such lateral railroad or side track to any railroad company, any person or company shall be entitled to connect therewith, or to use the same, upon payment to the party incurring the primary expense thereof of a reasonable proportion of the cost of the said lateral railroad or private side track, and of the maintenance thereof, which shall be determined, in case of disagreement among the parties, by the commission, after hearing the parties, provided that such connection and use can be made without reasonable interference with the use thereof by the party incurring the primary expense or owning or leasing said lateral railroad or side track.''

Appellee in its brief maintains that by virtue of the above-quoted provisions, a third person is entitled to participate in the use of a private siding connected with a public railroad only if the siding has been ''so connected'' with the main track of the railroad, that is, if it was connected by the railroad company itself, as provided in the first part of said subdivision (*n*) of section 3, after the approval of the Public Service Act of 1917, in compliance with the duty imposed upon it by said subdivision to ''construct, maintain, and operate'' the siding requested. Appellee insists that by virtue of that language the provisions transcribed do not authorize the Public Service Commission to grant participation in the use of a siding, such as that of Tenerías, which has been constructed at the expense and on land of a private person previous to the enactment of said provisions.

The Supreme Court of the State of Illinois, in *Public Utilities Comm.* v. *Smith,* 298 Ill. 751, 131 N. E. 371, 373, 374, construing a statutory provision wherein substantially the same language is used as that which gave rise to appellee's claim herein that subdivision (*n*) of section 3 of our Public Service Law is not retroactive, has expressed an opinion con-

trary to the views maintained by the appellee. The facts which served as a basis for the opinion rendered by the Supreme Court of Illinois in that case differ from those in which the complaint of Torruella and Flores originated, but in said opinion principles are announced and established which are fully applicable to the instant case. Said court, interpreting section 45 of the Public Utilities Act of Illinois, holds that any person is entitled to obtain participation in the use of a private siding connected with the main track of a public railroad, even though the siding has been constructed prior to the approval of the act. The pertinent part of said opinion reads as follows:

"We do not consider the case of *Koelle* v. *Knecht,* 99 Ill. 396, as in any way in conflict with this conclusion. In that case, where the contest was over the use of a side-track laid upon private ground, it was held that as to a coal company having no interest in the track in question it was not a public highway, and that case was decided before the Public Utilities act was adopted. Neither do we consider the decision of this court in *Sholl Bros.* v. *Peoria and Pekin Union Railway Co.,* 276 Ill. 267, as in any way in conflict herewith. In that case the proceeding was brought by Sholl Bros. to restrain the use of a track (which had been constructed by them) in violation of an express contract not to use the same for the purpose of hauling coal for others than Sholl Bros. It appears from the record in that case that no offer had been made to compensate Sholl Bros. for the proposed use on account of their investment in the private track, in accordance with the provisions of section 45 and 46 of the Public Utilities act, and those sections were not considered in that opinion. Those sections provide for the use by any person of a track constructed at the joint expense of the railway company and the shipper by making compensation to the carrier and the shipper for such use. If such tracks were, previous to the enactment of these provisions, in their nature private, they are rendered public and a part of the railway by these sections of the Public Utilities act, which provide that other parties may have free use under the conditions there stated. We see nothing in the decision of this court in *Sholl Bros.* v. *Peoria and Pekin Union Railway Co. supra,* that is in any way controlling on the questions here before us."

The conclusions of the Supreme Court of Illinois seem to us to be correct because they are based on reasons of public interest and because the right of the state to adopt reasonable and necessary measures to maintain public health and the welfare of the community can not be disputed.

The Public Service Commission in its opinion, in referring to the peculiar exigencies of the transportation of cane in Puerto Rico, says:

"We have already mentioned the peculiar exigencies of the problem of the transportation of cane by railroad and referred to the regulation adopted by the Public Service Commission, whereby the construction of sidings along the main track is only permitted at a distance of two kilometers from each siding to the next. So that, an equitable distribution of the sidings not having been made among the various zones and among the various persons interested in the shipping of cane in said zones, there is no doubt that those persons who obtained the construction of their sidings prior to the adoption of the regulations concerning the same, and even those who constructed subsequently, have under the present circumstances, virtual control of the means of transportation, in certain districts, which almost gives them a monopoly of the loading places, it being possible, for them, due to that fact, to acquire the land and the products thereof, to the prejudice of the general interests of the industry and of agriculture."

In our opinion, in accordance with subdivision (*n*) of section 3 of the Public Service Act of 1917, a private person fulfilling the conditions prescribed by law, may obtain, upon payment of compensation, participation in the use of a siding connected with a public railroad, even though said siding was constructed and connected prior to December 6, 1917, on which date said act was approved.

As to the validity and effect which the contracts of the South Porto Rico Sugar Co. may have on a matter which affects public service by railroad, we think, with the Public Service Commission, that the state has exercised its supreme authority to insure the uninterrupted application of a policy which it desired to establish, so as to benefit the community,

without considering prior contracts which may have been contrary to said policy. Before making any citations in support of these conclusions, we wish to state that Mr. Vasallo testified that the Tenerías siding was constructed without a contract from 1909 to 1927. Subsequently, he explained that there was a contract, an oral contract, the conditions of which were not the same as those of the last one, because a written contract contains certain specifications in general terms for the use and enjoyment of a private siding connected with the main track. The witness stated that the contract of 1927 was made for three years, renewable automatically as in the case of all siding contracts. In this last contract it was set forth that the South Porto Rico Sugar Co. agreed and bound itself to grant to the Compañía de Los Ferrocarriles de Puerto Rico the use of all the land occupied by the siding to the extent of five meters from the axle of the sidetrack on each side thereof. It was further agreed that the company would not use the siding to load or unload sugar cane or any other material for any other person or company, and would not use the siding for any purpose other than those specified.

We do not know the details of the verbal agreement made when the siding was constructed in 1909. We only know that the siding was constructed and that there was an agreement, because Mr. Vasallo, auditor and assistant general manager of the railroad company, so testified. The construction of the siding on that date, however, does not prevent the application of the law enacted in 1917.

In the case of *North Dakota Board of Railroad Examiners*, P.U.R. 1921 A, p. 121, the following was said:

"Contracts must be interpreted to be made in compliance with the possible exercise of the rightful and inherent authority of the government, and no obligation may be secured or covered by a contract for the purpose either intentionally or unintentionally of defeating inherent governmental authority. The power to draw up and enact a contract does not grant to an individual or municipality

the right to contract freely as he or it may choose. Freedom in contracting does not imply immunity from reasonable prohibitions in the interest of the public welfare. In *Atlantic Coast Line R. Co.* v. *Goldsboro*, 232 U. S. 548, 558; 58 L. ed. 721, 726; 34 Sup. Ct. Rep. 364, the court said:

" 'It is settled that neither the "contract" clause nor the "due process" clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise.'

"Also in the recent case of *Chicago & A. R. Co.* v. *Tranbarger*, 238 U. S. 67, 76; 59 L. ed. 1204, 1210; 35 Sup. Ct. Rep. 678, the Supreme Court of the United States, speaking through Justice Pitney in considering the impairment of the contract laws of the Federal Constitution, said: 'It is established by repeated decisions of this Court that neither of these provisions of the Federal Constitution (impairment of contract and due process of law provisions) has the effect of overriding the power of the state to establish all regulations reasonably necessary to secure the health, safety, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; and that all contract and property rights are held subject to its fair exercise. And it is also settled that the police power embraces regulations designed to promote the public convenience or the general welfare and prosperity, as well as those in the interest of the public health, morals, or safety.' (Citations.)"

In *Louisville & Nashville R. R.* v. *Mottley,* 219 U. S. 467, 482, the following was said:

"The agreement between the railroad company and the Mottleys must necessarily be regarded as having been made subject to the possibility that, at some future time, Congress might so exert its whole constitutional power in regulating interstate commerce as to render that agreement unenforceable or to impair its value. That the exercise of such power may be hampered or restricted to any extent by contracts previously made between individuals or corporations, is inconceivable."

In *Market St. Ry. Co.* v. *Pacific Gas & Electric Co.* (D. C.), 6 F. (2) 633, 635, P.U.R. 1926 A, 509, 515, it was said:

"On the question of the power of the state to regulate the contracts of its public utilities with their consumers the law is now well settled. 'The courts hold that all contracts relating to public service, entered into between the corporation operating a public utility and the private consumer, contain from the very nature of their subject-matter an implied reservation of the right of the state to lawfully exercise its police power for the general welfare, and that there is no impairment of the obligations of contract within the guaranties of the state or federal Constitution, even though said contract is thereby rendered partially or wholly invalid.'"

The fact that the cost of the siding was paid exclusively by the South P. R. Sugar Co. and that the parties agreed that the company would not use the siding to load or unload sugar cane or other materials for any other person or company, can not prevent the dedication of the siding to public use in accordance with the provisions of the statute. Under the laws relating to public utilities, a railroad company and the private owner of an industry can not, by an agreement, construct a siding and limit its use to certain shippers. Once the siding is constructed the same is subject to public use and to regulation, no matter who paid the cost of construction. *Von Oven* v. *C. B. & Q. R. R. Co.*, 317 Ill. 334, 148 N. E. 32.

The Organic Act of Puerto Rico, by its section 38, grants to the Legislature authority to enact laws relating to the regulation of the rates, tariffs, and service of public carriers by railroad in Puerto Rico. The Public Service Commission has power to enforce such laws under appropriate regulation.

The Public Service Law of Puerto Rico, enacted subsequent to the approval of the Organic Act now in force, provides, by its section 24, in referring to the power to regulate, that "said power and authority shall include the power to inquire into, hear, determine and regulate . . . the granting,

construction, operation, or discontinuance of switches, sidings and crossings," etc.

▉▉▉ The authority of the commission is, on our judgment, clear. There still remains, however, to be decided the fundamental question forming the basis of the decision of the District Court of San Juan. We know that said court reversed the order of the commission, on the sole ground that in order to reach the siding by any other place than the track of the American Railroad Company, it was necessary to cross the private lands of the South Porto Rico Sugar Co. The lower court considered that this would be equivalent to depriving said corporation of its private property without due process of law.

According to the evidence introduced by the South P. R. Sugar Co., the siding measures 152 meters from the point of the switch to the end of the wall. The South Porto Rico Sugar Co. appears to have granted to the railroad company in 1927 the use of all the land occupied by the siding to a distance of five meters from the axle of the sidetrack on either side thereof. The civil engineer José Rodas García, a witness for the company, testified that from the point of the siding to the neighborhood road there is a distance of 206 feet. He was asked what was the distance from the point nearest to the road and he answered that the figure did not appear in the survey. He was asked again if he could calculate the distance from the east side of said road and he answered that it was a little over one hundred feet, or approximately one hundred and twenty-five feet.

The intervener and appellant, Juan Torruella Cortada, testified that the Guánica owned only those two acres or one and a half acres of the land around said siding. We transcribe below part of the examination of this witness:

"Q. Have you permission to go on said land?

"A. On said land no; that is why I am requesting it.

"Q. Do you request permission to cross said land and reach the siding?

"A. The tracks are within the acre and a half.

"Q. Do you have to cross part of the land in order to reach the siding?

"A. Part of the land on which the siding is located, there is nothing else there.

"Mr. Muñoz. The Guánica has an acre and a half there?

"A. Yes, sir.

"Q. And the siding is on said land?

"A. Yes, sir.

"Q. And to whom do the lands around said acre belong?

"A. To Fagot, Milán, and Schuck.

"Q. Has Milán already said that he is using the siding?

"A. Yes, sir.

"Q. Does Fagot use it?

"A. I do not know whether he did business this year with the Guánica.

"Q. And the previous year?

"A. I think that the previous year in order to send to Central Boca Chica the cane contracted, he gave a proportional part of the cane to Guánica.

"Q. Does Mr. Schuck also use the siding?

"A. Schuck only has part of an acre.

"Attorney Toro: Do you refer to Federico Schuck?

"A. Yes.

"Q. He has no sugar canes.

"A. He was asking me about boundaries.

"Attorney Toro: And taking your sugar cane to the public road, can you load the same on the cars in the siding?

"A. There is a distance about the length of this room from the neighborhood road to the track.

"Q. To the center of the track?

"A. Yes. I have to cross the land, the parcel where the track is located, for there is nothing else, there; there are no plantings of any kind; it is pasture.

"Mr. Muñoz: There is nothing but pasture on said one and a half acres of the Guánica.

"A. It is abandoned. There is no fence between the neighborhood road and said acre. Goats and cows belonging to the neighbors pass through there."

The testimony of this witness shows that practically all the land which the South P. R. Sugar Co. has there is dedicated to the siding, although the track with its five meters on each side, starting from the axle of the railroad line, occupies only part of said land. There are no plantings or fence there, and the animals belonging to the neighbors pass through there, according to the testimony of Juan Torruella Cortada which has not been contradicted on this point.

We have seen that the Guánica Central constructed a siding some years ago and that its successor the South Porto Rico Sugar Co., has recently made a contract with the railroad company concerning said siding. When this siding was constructed a voluntary easement was established, not only in favor of the American Railroad Company of P. R., but also of such persons as might need to use said siding. The terms in which the contract was drafted are immaterial. The voluntary easement thus established extended, by reasons of public interest, to all persons in need of using the siding. The Guánica Central in constructing the same assumed obligations which constitute a real servitude as long as the connection with the railroad track exists. No one, however, compels the South P. R. Sugar Co. to maintain said siding, but if it continues to use it, and insists in enjoying the privilege granted, it must comply with the conditions required by law. As the Supreme Court of Illinois said in the case of *Von Oven* v. *Chicago etc. R. Co., supra,* a siding can not be constructed and its use limited to private use. The law requires that any siding so constructed be open to public use and be operated by the railroad with which it is connected.

Whenever a servitude is established all the rights required for its use are deemed to be granted. Section 478 of our Civil Code so provides. The servitude once established, carries with it impliedly all the rights necessary to make it effective. No servitude exists when the means of

exercising its rights are denied to the person to which it is granted. The servitude in the instant case would be nominal and void, as the commentators Scaevola and Manresa very well say. Commenting on section 542 of the Spanish Civil Code, equivalent to section 478 of our Code, the latter of said commentators says:

"The servitudes for watering animals and drawing water carry with them the obligation to give passage to the place where the water is; that of aqueduct gives the right to pass by its margins, etc. These servitudes, necessary for the enjoyment of other easements, are called accessory servitudes; they exist exclussively because of the main servitude. They exist only in so far as they are necessary; they can only be claimed when they are indispensable for the exercise of the main servitude; when the latter terminates, the accessory servitudes also die.

"Section 639 of the Italian Civil Code provides that in case the property is fenced, the owner must leave the entrance free and accessible to the person exercising the right of servitude. The entrance is free, as Filippis says, when it can be accomplished without outside help; it is accessible when the entry can be done without interference or delay, in the manner desired. Thus, in case there is a fence, a key to open and pass could and should be given to the owner of the dominant state freely."

As we have said, in the instant case no fence or crop is involved. All the land, according to one of the witnesses, is practically dedicated to the siding. A compliance with the conditions required by the Public Service Commission in order that the South P. R. Sugar Co. may continue to utilize the siding does not cause it any harm, according to the evidence. That sugar company must permit the proportional use of said siding by the interveners and appellants, as well as the right of way over the strip of land on which the said siding is located. The said company is not deprived of its property; simply a condition is imposed in favor of other persons who are entitled to use the servitude, upon payment of the corresponding compensation.

In the case of *Menasha Woodenware Co.* v. *Railroad Commission,* 166 N. W. 435, 438, the Supreme Court of Wisconsin said:

"The most serious contention made by the appellants in these cases is that the so-called spur track in question is not really a spur track, but is in fact an extension of the Kingston branch of the Northwestern line. We are quite unable to see how this contention can be successfully maintained. An extension of the line of a railroad becomes, when built, a part of the railroad system which the company must operate as a common carrier, serving the public thereby on equal terms; a spur track, on the other hand, though a part of the railroad system, is, in its essence, a facility for one shipper or for several shippers, who contribute to its construction, it being understood that it is open to all industries which may be practically served by it, who will contribute such equitable share of the original cost as the commission may determine. In its very nature it cannot serve the public in the complete manner that an extension does, because it is not intended for passenger service, and it only reaches the property of one industry, or perhaps several; but its use is none the less public on the part of the one industry or the several industries which it serves, because thereby the one industry or the several industries are enabled to be reached by the public and to be served by the common carrier to the fullest extent. The service of any particular spur is denied to no industry which it is reasonably feasible for the spur to serve, provided the industry pay its equitable share to the cost; in other words, all concerns which can possibly have any occasion to use the track in their business transactions with the public are given the right to use it on the same equitable terms. This must be held public use in a true sense, although not a public use of precisely the same quality as that which pertains to an extension of the main line of a railroad. . . . ."

In our judgment the right to use the siding upon reasonable conditions, claimed by the interveners and appellants, can not be denied. The South P. R. Sugar Co. can not reserve exclusively for itself the use of the same, as long as it utilizes and maintains the connection with the main track. There is involved a public service, the extension of which to appellants does not prejudice it in any way, once the condi-

tions of proportional payment required by law are equitably complied with. The commission does not impose on the South P. R. Sugar Co. the obligation to maintain the siding. It has simply directed the railroad company to abstain from further furnishing its services to respondent if the latter insists on its refusal to permit the interveners and appellants to use the said siding upon the payment of the corresponding compensation. The fact that the track has been laid at a certain distance, a very short one indeed, from the neighborhood road should be no obstacle to the use of said siding by Messrs. Torruella and Flores. It might not be unreasonable to require the South P. R. Sugar Co. to move the track to the side of the said road, which lies nearby, in order that the persons entitled to use the servitude could have access to the siding, without going upon the land it owns. Nor would it be unreasonable to inform the respondent that it must permit said gentlemen to cross that short distance in order to have access to the railroad cars, on the same land on which the siding is located, with the warning that if it fails to do so, it can not continue to enjoy the privilege granted to it.

The judgment appealed from must be reversed.

Mr. Justice Wolf dissented.