## COLDICOTT v. W. C. & A. N. MILLER DEVELOPMENT CO.

### No. 375.

Municipal Court of Appeals for the District of Columbia.

May 28, 1946.

Joseph T. Sherier, of Washington, D. C. (William H. MacDonald, of Washington, D. C., on the brief), for appellant.

Elmer E. Cummins, of Washington D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Defendant, a real estate broker, was sued for $2,500 which it had retained out of funds in its possession under a claim that such sum was due for a commission for the sale of plaintiff's property. The trial court found for defendant and plaintiff appeals.

Plaintiff was the owner of property for which she authorized defendant to secure a tenant. Defendant produced as a prospect the Belgian Economic Mission. After some negotiations, plaintiff entered into a lease with said Mission, which lease was for three years at $750 per month and gave the lessee an option to purchase the property "at a total price of $50,000" within ninety days from the beginning of the lease. It provided that $4,500 should be payable at the time lessee took possession, to cover the last six months' rent. The option was exercised within the prescribed period and the sale consummated. The broker paid over to plaintiff $2,000 of the $4,500 in its possession but refused to surrender the remaining $2,500 which it claimed as its commission for negotiating the sale. This suit resulted.

In a written memorandum the trial judge made the following findings of fact: "(1) The defendant's agent was employed by the plaintiff to find a purchaser for the plaintiff's property. (2) The defendant's agent in fact procured a purchaser, to wit the Belgian Economic Mission. (3) The Belgian Economic Mission, after considerable negotiations, later purchased the property for which the defendant was the procuring cause. (4) At the final consummation of the sale of the property, the written lease with a 90-day option to purchase was silent as to the defendant's commission." Based upon said findings he also made the following conclusion of law:

"The defendant, having been the procuring cause for the sale of the property and no provision having been made for his commission, the defendant, on the authority of Campbell vs. Rawlings, 52 Appeals 37, is entitled to retain the established real estate broker's commission of 5 per cent, amounting to $2,500."

We think the conclusion and decision of the trial court are not supported by the evidence and that certain uncontradicted testimony in the case required a finding for plaintiff. We refer specifically to the testimony concerning a certain listing card signed by the owner. In this jurisdiction such a card is the usual method by which a broker is employed. Under our law [1] no broker may offer property for sale or rent without the written consent of the owner or his authorized agent. Thus the listing card usually constitutes the agreement between owner and broker; and unless it is superseded by some later writing, or otherwise modified by the parties, it evidences the understanding between them.

In this case the testimony for plaintiff was that from the outset of the negotiations plaintiff and her husband had insisted that the selling price must be $50,000 "net to us," and had in fact refused to sign the first draft of a lease tendered by the broker because it contained a provision for a "total price" of $50,000. Testimony for plaintiff was that though she did finally sign a lease containing such an option clause she did so only after repeated assurances on the part of the broker's representative, a Mrs. Rice, that the price would be $50,000 net to plaintiff, and that she, Mrs. Rice, would bring in the listing card (which had been filled out by the broker some time earlier, but not signed by the owner) and that Mrs. Rice assured them the listing card would recite a price of $50,000 net. This testimony as to the price being net was repeated by plaintiff and her husband at least a dozen times. Plaintiff's position was emphasized by testimony that when Mrs. Rice brought in the listing card and it showed an option to purchase at $50,000 with no recital that such price was to be net, plaintiff insisted, "This isn't right. This isn't our agreement," and demanded that Mrs. Rice "finish this out like it should be: $50,000 net to Vivian V. Coldicott in the event of a sale"; that Mrs. Rice "took her fountain pen and she wrote the fact $50,000 was $50,000 net to Vivian V. Coldicott and changed her date to correspond with our lease, and I signed it, and she got on her merry way."

---

[1] Code 1940, § 45—1408.

Mrs. Rice did not agree exactly with all that plaintiff said, but she did admit that after her discussion with plaintiff she wrote on the face of the card, "For sale 50,000 net." She added that that would be to anyone else who might buy the property if the Belgian Government did not buy it. But, as we see it, that was at best a unilateral understanding on the part of Mrs. Rice; and she did not say that such understanding was in any manner communicated to or concurred in by plaintiff. (The listing card was not produced at the trial and its absence was explained on the ground that it had been lost in the broker's office.)

Thus the uncontradicted evidence established that the fundamental agreement between seller and broker was that the seller was to receive $50,000 net; and this completely negatives any theory of an express agreement to pay a commission in the event the option was exercised, and the property sold at that figure. It just as effectively negatives the theory that there was an implied agreement to pay a commission. The term "net," as we understand it, when applied to a sales price, means free of charges or deductions of any kind.[2] It is wholly inconsistent with a claim for commission on a sale at the net price named.

It was in this respect that we think the trial judge reasoned erroneously that there was an implied agreement for commission, and that "no provision having been made for his commission, the defendant, on the authority of Campbell v. Rawlings, 52 App.D.C. 37, 280 F. 1011, is entitled to retain the established real estate broker's commission of 5 per cent, amounting to $2,500."

We do not question that the case cited is authority for the proposition stated. But in that case the owner did not attempt to fix a net price; and the court upheld a verdict for the broker on the ground that in procuring a lease with an option to purchase the broker became by implication entitled to a commission when the option ripened into a sale. It will be seen at a glance that the Campbell decision does not support the claim of the broker in this case. There the case turned, not on the right to recover a commission, but on the amount thereof. Here the agreement was express and the terms fixed.

It is true that the option in the lease referred to a "total" selling price of $50,000. But the evidence made it quite clear that this was on the insistence of the purchaser who frankly refused to be bound for any commissions. Moreover, the lease was not a contract between the owner and the broker; their agreement was, as we have said, set out in the listing card.

It is also true that at the behest of the owner Mrs. Rice later went to the purchasers in an effort to induce them to pay the commission, and met with no success. But this was only a matter of negotiation and did not affect the agreement between broker and seller, as manifested in the listing card.

Appellee argues that it is not likely that the broker would have agreed to waive a $2,500 commission when at most it could have earned $1,350 under the rental features of the lease. But the short answer is that under the uncontradicted evidence that is precisely what the broker did. Whatever the reasons were, and whether the action was wise or unwise, we think only one conclusion can be drawn from the evidence: that in the only writing between broker and owner the broker agreed that the sale was to be completed upon a "net" basis, and that this clearly meant that no commission would be payable by the owner on a selling price of $50,000. We think our decision is generally supported by the following decisions in addition to those we have cited above: Johnson v. Virginia-Carolina Co., 4 Cir., 163 F. 249; Gilmore v. Bolio, 165 Mich. 633, 131 N.W. 105, 34 L.R.A.,N.S., 1050; Beatty v. Russell, 41 Neb. 321, 59 N.W. 919; Ames v. Lamont, 107 Wis. 531, 83 N.W. 780.

Reversed.

---

[2] Oltedale v. United States, D.C.R.I., 39 F.Supp. 998; United States Trust Co. of New York v. Sears, D.C.Conn., 29 F.Supp. 643; Cleveland v. Glassell, 117 Cal.App. 713, 4 P.2d 596; Schneidau v. Manley, 131 Conn. 285, 39 A.2d 885; Gibbs v. People's Nat. Bank, 198 Ill. 307, 64 N.E. 1060; Wolverton v. Tuttle, 51 Or. 501, 94 P. 961; Overshiner v. Palmer, Tex.Civ. App., 185 S.W. 387.