The LEO M. BERNSTEIN & CO. SALES,
Inc., Appellant,

v.

Luther L. MILLER, Margaret R. Miller,
Appellees.

No. 1843.

Municipal Court of Appeals for the
District of Columbia.

Argued July 30, 1956.

Decided Oct. 18, 1956.

Charles S. Sures, Washington, D. C., for appellant. David M. Wortman, Washington, D. C., also entered an appearance for appellant.

Herman Miller, Washington, D. C., for appellees.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

A real estate broker and the sellers were sued by a purchaser for the return of her deposit on the ground of the sellers' inability to convey the property according to the terms of the sales contract. The broker cross-claimed against the sellers for its commission. The trial court entered judgments for the purchaser against the sellers and for the sellers against the broker on the latter's cross-claim. Against the second entry the broker appeals.

The facts pertinent to this appeal are as follows: The sellers, husband and wife, dealing through the husband, listed certain real property for sale with the broker. The lot dimensions appearing on the listing card were "50 x 138.9." Subsequently, the sellers entered into a written contract for sale of "part of" the listed property with a prospective buyer produced by the broker, at which time the broker accepted a deposit of $1,000 from the purchaser as part payment of the $15,100 purchase price. On the sales contract, the dimensions described were "37 feet frontage by 138.9 feet in depth." The listing card noted a first trust of $11,100 upon the property it described. The contract called for the purchaser to assume a first deed of trust secured "on the premises" of approximately $11,100 and to pay the balance of the purchase price in cash.

On the date set for settlement, the purchaser discovered that the existing trust she was to assume, within the contemplation of the contract, encumbered not only the premises to be sold but an additional area immediately adjacent. This was the balance of the sellers' property appearing on the listing card, from which the reduction in frontage in the contract of sale had been made. Title to the neighboring portion was to remain in the sellers, making the trust partly the buyer's obligation and partly the sellers'.

The trial court found, for this and a second reason not involved on this review, that the sellers had failed to make a proper and complete tender and held the purchaser entitled to a return of her deposit from the sellers (to whom the $1,000 had been transferred by the broker upon the purchaser's written authorization). No appeal is taken from this judgment.

The appeal before us is in connection with the broker's claim for a commission from the sellers. The trial judge found on this branch of the case that "the purchaser * * was ready, willing and able to buy the property specifically set forth in the contract."

However, since the broker possessed the same knowledge the sellers had that they were "in effect, offering a piece of property that could not be sold * * * under the terms of the contract clearly set forth," the court held the broker was not entitled to a commission.

It is a familiar rule that a real estate broker, producing a customer ready, willing and able to buy property on terms identical with those authorized by the seller earns his commission. The listing card, which usually establishes the agreement between broker and seller,[1] in this case described the property to be sold by lot and square and as having a frontage of fifty feet, and listed this property as encumbered by a first trust of $11,100. There is no dispute that if these terms had been incorporated into the sales contract a sale would have been consummated in this case. In its typewritten content the contract recited the terms of the listing agreement, excepting the dimensions which were not mentioned. However, interpolations made in ink on the contract described the property to be sold as "part of" the lot specified on the listing card and "consisting of lot 37 feet frontage by 138.9 feet in depth."

The court found that when the listing was given, the broker had full knowledge that the sellers were offering only a portion of the fifty foot lot for sale. The husband testified that "everybody in the Bernstein Company knew that there was going to be a reduction * * * in the number of feet in the lot," specifying that this was known to two particular agents of the broker. The only countervailing testimony on behalf of the broker was that of another agent of the broker, who "was familiar with this transaction," that no knowledge had come to him of the frontage of the property for sale being reduced before the signing of the contract of sale or that "there was any problem regarding the securing of the first trust." The trial court's finding

1. Coldicott v. W. C. & A. N. Miller Development Co., D.C.Mun.App., 47 A.2d 518.

that the broker had knowledge that there was to be a reduction in frontage at the time of the listing agreement cannot be disturbed since the broker is deemed to have the same knowledge as his agents.[2] They were not produced nor was there any evidence that they were not duly authorized and acting in the course of the broker's business or that they were not so informed by the husband. Before the purchaser was procured the listing agreement was thus modified and must be considered the understanding between broker and seller to the extent that the dimensions of the property offered for sale now were reduced from those on the listing.[3] Nor is the trial finding unwarranted that the broker also knew in advance of procuring the purchaser that the sellers wanted to sell part of their property with "one blanket trust" on the whole. The listing card clearly spelled out the bounds of the trust's coverage.

■ It is true, as the trial judge found, that this purchaser was ready, willing and able to buy on the terms set forth in the contract of sale. And the broker ordinarily earns his commission even if the sale negotiated is not completed due to the seller's failure to convey according to the terms of the contract.[4] However here the broker procured a prospect who at the time she signed the contract was not apprised of the true coverage of the trust she was to assume although the broker was employed to find a purchaser for a "part of" the sellers' lot who would assume a blanket first trust on the whole lot. Thus it cannot be justifiably claimed that the contract the purchaser signed clearly and unequivocally met the authorized terms of the sellers. The sellers were offering a part of their property if the buyer would assume a trust on the whole. This, as we have said, the broker is deemed to have known. The buyer, on the other hand, was offering to buy property with a trust on those premises only. Clearly, there was a material deviation between the terms offered by the sellers and the deal the purchaser procured was willing to make.[5] A broker is not entitled to a commission for procuring worthless, viz., unauthorized, offers.[6]

Affirmed.

2. Bowen v. Mount Vernon Sav. Bank, 70 App.D.C. 273, 105 F.2d 796.

3. Coldicott v. W. C. & A. N. Miller Development Co., supra.

4. Dotson v. Millikin, 27 App.D.C. 500; Weltman's, Inc. v. Friedman, D.C., 102 F. Supp. 485; Cornwell v. Hollander, D.C. Mun.App., 82 A.2d 140.

5. Heurich v. Sullivan, 52 App.D.C. 95, 281 F. 599; Altman v. De Jong, D.C.Mun. App., 113 A.2d 747.

6. Dreyfuss v. Boling, D.C.Mun.App., 60 A. 2d 230.