John A. Ouska et al., Appellees, v. Gustaf Pearson et al., Appellants.

Gen. No. 39,398.

 Heard in the first division of
this court for the first district at the April term, 1937. 
 Opinion filed June 14, 1937. Rehearing denied June 28, 1937.

ROBERTSON, CROWE & SPENCE, OWENS & OWENS and
JOHN E. ERICKSON, all of Chicago, for appellants;
CLYDE C. FISHER, of Chicago, of counsel.

BROWN, FOX & BLUMBERG, of Chicago, for appellees;
JACOB LOGAN FOX, LIONEL A. MINCER and JACOB T.
PINCUS, all of Chicago, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the
court.

Plaintiffs alleged that defendants had in writing
guaranteed payment of an issue of bonds aggregating
$32,500, secured by trust deed, and as holders of an un-
paid portion of these bonds sought to recover from de-
fendants on this instrument. Upon trial they had a
directed verdict, and judgment was entered against
each of the defendants for $27,368.77. This appeal
follows.

Upon trial plaintiffs introduced in evidence the docu-
ment upon which suit is brought. Defendants claimed
that it was uncertain and ambiguous in its terms and
sought to introduce parol testimony explaining the cir-
cumstances giving rise to the document and the pur-
pose of its execution by defendants. Objections to any
explanatory evidence were sustained and the directed
verdict and judgment followed.

Does the document come within the rule that where
an instrument is clear and unambiguous in its terms it
must be construed according to the language used, with-
out any extrinsic evidence? (*Williams v. Fletcher*, 129
Ill. 356.) Or is the instrument ambiguous and of doubt-
ful meaning, permitting the court to take into con-

sideration all the facts and circumstances surrounding the parties at the time it was signed? (*Peoria Savings, Loan & Trust Co. v. Elder,* 165 Ill. 55.)

The amended statement of claim alleges that on or about January 10, 1928, Grace F. Rickoff and Clarence M. Rickoff, being about to become indebted in the principal sum of $32,500, executed their 83 bonds aggregating this amount and maturing at varying dates; that on or about June 26, 1928, the Rickoffs and the defendants herein requested the Capital Mortgage Corporation to pay the Rickoffs the amount of $32,500, accepting the bonds as security, in consideration of which the defendants on that date executed and delivered the document, the subject matter of this suit.

This document describes the defendants as the contractors or subcontractors in connection with an apartment building constructed upon a certain lot (apparently the lot owned by the Rickoffs upon which they sought the loan to be secured by the trust deed). The document recites that the defendants "do hereby jointly and severally guarantee the mortgage executed by way of trust deed signed, executed and delivered under date of January 10, 1928, by Grace F. Rickoff and Clarence M. Rickoff to Chicago Title & Trust Company, trustee, and of all of the bonds secured by the said trust deed, the delivery of which trust deed and bonds was made by said Grace F. and Clarence M. Rickoff to Capital Mortgage Corporation, with whom said Grace F. and Clarence M. Rickoff applied for a real estate mortgage loan in the sum of Thirty-two Thousand, Five Hundred ($32,500.00) Dollars, and application for which is in the files of said Capital Mortgage Corporation." The document further recites that it is for the benefit of the Capital Mortgage Corporation and of all persons who may be purchasers of any of the bonds secured by the trust deed; the defendants jointly and severally agreed to save harmless the Mort-

gage Corporation or its assigns "from all claims, demands, actions or causes of action of every nature and description arising out of or on account of work done upon or materials furnished for . . . or upon the building . . . or improvements erected upon the real estate described." (Then follows the legal description.) The defendants warranted that there were no claims for mechanics' liens on account of labor or material furnished upon the property, and that if any should be made the defendants agreed to protect the mortgage corporation or its assigns on account of any such claims.

The purpose of the document is stated as follows:

"This agreement is executed by the undersigned for the purpose of inducing Capital Mortgage Corporation to disburse moneys under the aforesaid mortgage, and for the purpose of inducing Capital Mortgage Corporation to make such disbursements the recipients of most of said proceeds under said loan being the undersigned contractors, and this agreement is executed in consideration thereof, especially by virtue of entanglements which arose in connection with the said real estate subsequent to the application for said real estate loan having been made to said Capital Mortgage Corporation by the said Grace F. and Clarence M. Rickoff. . . ." This was signed by all the defendants.

Plaintiffs say this document is an unambiguous and clear guaranty by defendants of the *payment* of the bonds mentioned therein. Considered alone the document raises several questions. Did defendants intend to guarantee the *payment* of the mortgage indebtedness, and if so why did they not express this definitely? In cases like *Continental Ill. Nat. Bank & Trust Co. v. Cardwell*, 287 Ill. App. 227, cited by plaintiff, the defendant in express terms guaranteed the *payment* of the indebtedness. The guaranty in the instant document does not contain in definite language any agree-

ment to pay. It guarantees the mortgage and the bonds secured by the trust deed. The document was drawn by the mortgage corporation, and if it was intended to guarantee payment, why did the document leave this open to question?

Moreover, the signers of the document were persons who had contributed labor and material in erecting a building upon the lot conveyed by mortgage and manifestly executed this instrument for the purpose of receiving payment therefor. If to accomplish this they obligated themselves to pay the entire mortgage indebtedness, they would be worse off than if they had made no move to receive payment for they would have obligated themselves for a larger amount than was due them for labor and material.

It is also reasonable to assume that the respective amounts due severally to each of the defendants would be greatly less than the amount of the mortgage indebtedness. In fact, it is stated that the defendants received payments in amounts running from $1,000 to one to something over $9,000 to another. It is unthinkable that a subcontractor would obligate himself to pay $32,500 in order to obtain payment of $1,000 due him. These considerations and others raise serious questions as to the intention of the signers of the document.

The document contains a suggestion as to this in reciting that it is executed for the purpose of enabling the contractors to receive payments, and ''especially by virtue of entanglements which arose in connection with the said real estate subsequent to the application for said real estate loan. . . .'' What were the ''entanglements'' which called for the execution of the document?

Considering the document, then, as a whole, and not as expressing an agreement in any single provision or word, we hold that the contract, literally construed, would be unusual, inequitable, and such as reasonable

men would not likely enter into. *Pressed Steel Car Co. v. Eastern Ry. Co., etc.,* 121 Fed. 609. The document cries for an explanation. This explanation was furnished in the offer of proof made by defendants and excluded by the court.

Briefly stated, the defendants offered to prove that Clarence Rickoff owned the property in question and made arrangement with certain of defendants, as contractors, to erect a building thereon; not receiving payment, the work was suspended; the following January, 1928, a number of the defendants met with Rickoff and were shown by him a letter from the Capital Mortgage Corporation stating that there would be sufficient money to pay the contractors; the work was then resumed. No payments being made, the contractors subsequently were told by Rickoff that the mortgage corporation refused to pay the money on the loan as they had discovered that there was a prior mortgage of $7,500 on the land and that it was necessary to take care of this before the loan of $32,500 could be consummated and the contractors receive their pay. Defendants were told by Mr. Kahn, president of the mortgage corporation, that it was necessary for all the contractors who had worked on the building to do something to get the $7,500 land mortgage out of the way, and that they must also release their liens on the building before any money would be paid out on the loan.

Later they were told that there would not be enough money from the loan to pay all the contractors in full and that each must waive a certain portion of the amount of his claim, and that they must sign an agreement to waive all lien claims and also to remove the $7,500 prior land mortgage. Defendants met at the office of the mortgage corporation and were shown by Mr. Kahn the typewritten agreement in question, which they were told they must sign before any money would be paid on their claims, and the document was explained

to the contractors by Mr. Kahn, as above stated. Nothing was said about the contractors agreeing to guarantee the payment of the principal and interest of the $32,500 loan.

Defendants offered to prove that at this and other meetings no mention was made of the contractors guaranteeing the payment of this mortgage. They sought to introduce in evidence a letter written by Mr. Kahn tending to confirm this.

Defendants also offered to show that the contractors borrowed from the North Town State Bank sufficient money to pay off this $7,500 land mortgage. After this was paid and all the contractors had signed the document in question the mortgage corporation paid the contractors lesser amounts than were actually due them—as we have said, ranging from $1,000 to $9,315. These payments were accepted in full settlement of their claims.

All the evidence offered by defendants should have been admitted. It explained the doubtful and unusual provisions of the instrument and tended strongly to show that the contractors signing it intended only to guarantee that the mortgage loan of $32,500 was a first lien, this having been accomplished by the payment of the prior land mortgage of $7,500. It also tended strongly to prove that the only purpose of the contractors in doing this and waiving their lien claims and the execution of the document to this effect was to enable the contractors to receive payments out of the $32,500 for labor and material furnished in the construction of the building.

Defendants' counsel questions the right of plaintiffs to bring suit without complying with section 22 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 150; Jones Ill. Stats. Ann. 104.022, which requires that an assignee of a non-negotiable chose in action set forth on oath how and when he acquired title, to which

plaintiffs made the sufficient answer that they are not suing as assignees but as bondholders and beneficiaries under the instrument sued on.

Plaintiffs also assert the right to have a separate judgment entered against each of the several defendants as provided for in rule 28 of the municipal court.

We are of the opinion the jury should be permitted to consider all the facts and circumstances surrounding the transaction and that the exclusion of the evidence offered in defense is reversible error. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*

MATCHETT, P. J., and O'CONNOR, J., concur.