38

O. M. Wilkin et al., Appellants, v. Citizens National Bank of Paris et al., Appellees.

Gen. No. 9,119.

Opinion filed October 14, 1938.  Rehearing denied January 3, 1939.

JONES, GRANT & JONES and REARICK & REARICK, both of Danville, for appellants.

ACTON, ACTON & BALDWIN, of Danville, RILEY MC-CLAIN and BENJAMIN H. REDMAN, both of Paris, and CRAIG & CRAIG, of Mattoon, for appellees.

MR. JUSTICE FULTON delivered the opinion of the court.

This is a suit brought by certain stockholders of the First National Bank and Trust Company of Paris, Illinois, now the appellants, against the Citizens National Bank and the Edgar County National Bank, both of Paris, Illinois, and others, the appellees, arising out of a certain contract dated January 18, 1931, between the three above named banks.

The complaint alleges that the plaintiffs are all stockholders of the First National Bank and Trust Company of Paris, Illinois, and that on January 18, 1931, a written contract was entered into between the three banks above named.  All three were national banks and actively engaged in the conduct of the bank-

ing business in the city of Paris, Illinois. Under the second paragraph of said contract the Citizens Bank of Paris, Illinois, and the Edgar County National Bank, of Paris, Illinois, undertake as follows:

"We the undersigned hereby promise and agree to guarantee and assume the LIABILITIES of the First National Bank and Trust Company of Paris, Illinois, as shown by the books of the First National Bank and Trust Company of Paris, Illinois, as of the close of business January 17, 1931. (See Statement attached.)"

In paragraph three of the contract it is stated: "Immediate credit will be given all creditors of the First National Bank and Trust Company of Paris, Illinois, on their deposits and liabilities at either of the banks named upon the request of the customers or creditors."

Paragraph four of the contract reads as follows: "All of the assets of the First National Bank and Trust Company of Paris, Illinois, of any character whatsoever will be immediately turned over to the Trustee or Trustees to be selected by the banks who are parties under the terms of this agreement."

Paragraph eight of said contract provided: "It is understood that none of the liabilities of the old shareholders of the First National Bank and Trust Company of Paris, Illinois, will be affected by this agreement, and it is specifically agreed that all rights as to the stockholders assessment, if such assessment becomes necessary, will be preserved for the benefit of the parties signing this agreement."

Paragraph ten of the contract provides: "The Directors of the First National Bank and Trust Company will immediately proceed to call a meeting of the stockholders as required by law and vote to place the bank in voluntary liquidation."

A statement of the resources and liabilities of the First National Bank and Trust Company was attached

to the contract. The complaint further alleges that at the time of the execution of said contract said First National Bank and Trust Company had assets and resources as set forth in the schedule attached to said contract in the amount of $1,176,598.81; that contemporaneous with the execution of the said contract and as a part of the consideration therefor a contract of indemnity was entered into between the directors of the said First National Bank and Trust Company and the said Citizens National Bank and Edgar County National Bank wherein and whereby the directors guaranteed payment of deficits up to $50,000.

The complaint further charges that no accounting has ever been given to the stockholders of the First National Bank and Trust Company and particularly that the defendants did not carry out their obligation to guarantee, assume and discharge the liabilities specified in said contract as capital stock, surplus fund or undivided profits. The complaint prays for an accounting and that damages might be assessed in favor of the plaintiffs and against the defendants on account of the alleged breach above recited, or in the alternative that a decree be entered to specifically perform the terms of said contract.

The answer of the defendants admitted all the allegations of the complaint except the following: As to the written contract of January 18, 1931, between the three banks they aver that if said instrument should be construed to mean that thereby the defendant banks guaranteed to assume and discharge the liabilities of said First National Bank and Trust Company specified as capital stock, surplus fund or undivided profits, the execution of said instrument was not authorized by the directors of said respective banks, or any of them, and is not a valid and binding contract, the only authority being given to the officers of said respective banks was to execute a contract whereby the said defendant banks would assume the deposit liabilities of said First Na-

tional Bank and Trust Company. The answer further denied that upon the execution of the contract the defendant banks took possession of the assets and resources of the First National Bank and aver that said assets were transferred to the trustees appointed pursuant to said contract, which trustees now file with said answer an accounting as prayed.

The answer further denies that the defendants failed to carry out their contract; deny that the capital stock, surplus fund or undivided profits are included among the liabilities to be assumed and discharged in said contract, averring that the true construction of the contract as understood by the contracting parties was that only the deposit liabilities were to be assumed; admit that the plaintiffs were entitled to an accounting which was attached to and made a part of the answer.

The defendants also filed a counterclaim asking that the contract of January 18, 1931, be reformed to correct an error of fact and to show that word "liabilities" should have read that they assumed the "deposit liabilities." A formal replication was filed by the plaintiffs to the said counterclaim.

In the statement attached to the contract under the page entitled "Liabilities" the following three items appeared:

> "Capital Stock ...............$150,000.00
> Surplus Fund ............... 20,000.00
> Undivided Profits .......... 7,254.07"

The cause was referred to the master in chancery who heard the evidence and reported his conclusions recommending that the complaint be dismissed for want of equity. A final decree was entered November 18, 1937, overruling exceptions to the master's report and dismissing the complaint for want of equity. From that decree the present appeal has been perfected.

It is the contention of the appellants that the contract in this case was full and complete and was not ambiguous in any of its terms and therefore the negotiations leading up to its execution, what was said by the parties at that time and their subsequent conduct, could not be considered in its interpretations. They rely entirely upon the premise that the word "liabilities" legally and technically includes, "Capital stock, surplus and undivided profits," and can have no other meaning.

The appellees insist that the word "liabilities" under the contract in this case does not mean to include "Capital stock, surplus and undivided profits"; that the relation of a stockholder to a corporation is not that of a creditor but merely as a part owner of its assets after its debts are paid. They further urge that the appellants cannot maintain their position in this case unless they succeed by competent proof in showing as a matter of construction that the word "liabilities" was used in the contract in this case with the intention of the contracting parties to include "capital stock, surplus and undivided profits."

The issue involved in this case is therefore, whether under this contract the liabilities assumed by the two banks were limited to what is known as deposit liabilities or whether said banks were answerable and accountable for capital stock, surplus fund and undivided profits to the stockholders.

It is manifest that if the contract in question had a definite fixed meaning and was free from ambiguity that the court should not concern itself with the negotiations of the parties, the surrounding circumstances or the intention at the time of the execution of the instrument. It is well established by the decisions of our courts that a court of equity may not under the guise of construction make a new or different contract for the parties. *Gibbs v. People's Nat. Bank,* 198 Ill.

307. Neither does the court have any power to import into a contract other or additional provisions. *Burt v. Garden City Sand Co.*, 237 Ill. 473. It is also definitely settled that in determining whether or not there is such an ambiguity as calls for an interpretation of a contract the whole instrument must be considered and not an isolated part thereof. *West v. Ranney Refrigerator Co.*, 261 Ill. 560. An examination of the entire contract leads us to believe that there might be some doubt about the meaning of the word ''liabilities'' as used in the second paragraph of the contract. It is a well known principle of law that a stockholder of a corporation is not a creditor of said corporation and that a stockholder in a bank is not entitled to share in the proceeds of what a receiver shall realize out of the assets until all the debts are paid. *Chicago Title & Trust Co. v. Central Trust Co.*, 312 Ill. 396.

It is clear from a reading of this contract that the assets of the First National Bank and Trust Company were not sold to the guarantor banks but were turned over to the trustees. If this were not a fact there would have been no need of providing for trustees in the contract. Its provisions show that the money advanced by the guarantor banks was simply a loan or advancement upon which they were to receive 5 per cent interest upon the money advanced. The two guarantor banks were to participate in the trusteed assets only to the extent necessary to reimburse them. The contract further provides for immediate credit to be given to the creditors of the First National. Nothing is said about the stockholders. It is further provided in the contract that none of the liabilities of the old shareholders of the First National Bank will be affected by this agreement and that all rights as to the stockholders' assessment will be preserved for the benefit of the parties signing the agreement. It seems inconsistent with the intention of the contracting par-

ties that the stockholders should be guaranteed the par value of their stock and their proportionate share of undivided profits and surplus and also provide that they remain liable for their assessment under their stock liability. The mere parenthetical reference ''See statement attached'' which included under liabilities the capital stock, surplus and undivided profits would not of itself in our judgment make those items a liability of the corporation. Because of the facts above stated we believe there is considerable doubt as to the meaning of the word ''liabilities'' as used in this contract. Before it can be said there is no ambiguity the court must conclude that the word in question is only capable of one interpretation, and that conclusion must be determined from a consideration of the entire contract and not from some single portion thereof. By reason of the doubt arising as to the true sense and meaning of the word ''liabilities'' the sense and meaning of the language may be investigated and ascertained by evidence dehors the instrument, and in such case parol evidence is necessarily admissible, and the court in order to place itself as nearly as possible in the situation of the parties at the time will consider all the facts and circumstances leading up to and attending the execution of the contract. In the case of *Weber v. Adler*, 311 Ill. 547, the court said:

''A latent ambiguity occurs where a writing appears on its face clear and unambiguous, but which, in fact, is shown by extrinsic evidence to be uncertain in meaning, or where a description apparently plain and unambiguous is shown to fit different pieces of property, and in such case, the ambiguity being raised by extrinsic evidence, the same kind of evidence may be admitted to explain it or identify the property referred to in the writing.'' The same principle is discussed and announced in the case of *Ouska v. Pearson*, 291 Ill. App. 6. The latter case also holds that, ''considering

the document then as a whole and not as expressing an agreement in any single provision or word we hold that the contract, literally construed, would be unusual, inequitable, and such as reasonable men would not likely enter into.'' Concluding therefore, that the contract was of such doubtful meaning as to permit the court to take into consideration all the facts and circumstances surrounding the parties at the time it was signed the following testimony was competent for the court to consider. On October 9, the First National Bank of Paris was examined with the result that an impairment of the capital stock of $132,825 was clearly shown. The comptroller notified the bank that the stockholders must pay in that amount within three months or the bank would have to close its doors. Being unable to raise the required amount, the chief national bank examiner, W. S. Cutler, called in the presidents of the two other banks and laid the situation before them. After many conferences and negotiations in which Cutler told the other banks they would have to take over the deposit liability of the First National, if they wished to prevent the closing of such bank, the contract in question was entered into. At all of the discussions there was only mention made of deposit liabilities and the other two banks refused to assume the deposit liabilities without a further guarantee being signed by the directors of the First National Bank herein before mentioned. He further testified that the intention was that all the assets should be trusteed and that the two banks would be paid in full for the deposit liabilities they assumed; that the shareholders of the First National Bank would get only what was left and that they would receive nothing unless there was an excess of assets to pay the deposit liabilities. There is no contradiction to the testimony of the witness Cutler. The minutes of the board of directors of both the guarantee banks stated substan-

tially that they approved of the contract assuming the deposit liabilities of the First National Bank and taking in payment thereof the assets of the First National Bank, said assets to be trusteed under a special agreement. A motion was carried authorizing the president and cashier to sign agreements to carry out such arrangements. A full accounting appears to have been made by the trustees as to their management of the assets.

To our minds it is plainly apparent from the record in this case that all contracting parties fully understood that the liabilities assumed by the creditor banks were only the deposit or public liabilities of the First National Bank. The directors and officials of both the Citizens and Edgar County Banks so understood it as expressed in the minutes of their meetings. Cutler at all of the conferences explained that to be the contract and there is no intimation by any person connected with the case, either as a stockholder or otherwise, that it was contended that the creditor banks had to pay off the stockholders. To hold the guarantor banks to such a literal construction of the contract would in this case be unusual, inequitable and such as reasonable men would not likely enter into.

Under our view of the necessity for a construction of this contract by extrinsic evidence, we think it was proper for the trial court to deny the appellees relief on their counterclaim asking for reformation of the contract.

For all of the reasons hereinabove expressed, we hold that the decree of the circuit court dismissing the complaint for want of equity was entirely warranted by the record in this case; that the same is supported by the competent proof and is therefore affirmed.

*Affirmed.*