SCHRIEFFER'S MOTOR SERVICE, INC., Plaintiff,

v.

UNITED FREIGHT FORWARDERS, INC., Defendant.

Civ. No. 3–61–120.

United States District Court
D. Minnesota,
Third Division.

Oct. 23, 1962.

H. Z. Mendow, Minneapolis, Minn., Burton G. Hirsch, Chicago, Ill., for plaintiff.

Mitchel I. Kirshbaum, of Sachs, Latz & Kirshbaum, Minneapolis, Minn., for defendant.

DONOVAN, District Judge.

This is a nonjury diversity action to recover amounts alleged to be due and owing plaintiff from defendant for services rendered pursuant to a written contract.

Plaintiff is an Illinois corporation. Defendant is a corporation organized under the laws of Minnesota. The complaint alleges that on April 14, 1961, there was due and owing from the defendant to the plaintiff the sum of $14,220.80 by virtue of a written contract dated February 1, 1960. Plaintiff prays for judgment in this amount.[1]

Defendant, by its answer, admits execution of the written contract alleged in the complaint, but denies that it owes plaintiff the amounts claimed.

For its setoff and counterclaim, defendant alleges that plaintiff was to perform certain services for defendant pursuant to oral agreements in effect from December 1, 1959, to February 1, 1960, and thereafter pursuant to the written contract between the parties which remained in force until December 31, 1960.[2]

---

1. Plaintiff's claim consists of the following particulars:

1. Balance due on receiving charges previously omitted — $10,640.00
2. Balance due on all billings sent to defendant prior to December, 1960 — 1,605.40
3. Balance due for services rendered by plaintiff in December, 1960 — 1,950.96
4. Amount paid out by plaintiff for which reimbursement is sought — 24.44

Total, $14,220.80

2. Defendant by answer denies that it is indebted to plaintiff and pleads offset and counterclaim seeking judgment against the plaintiff in the sum of $8,262.22, made up of the following:

Overcharges for services rendered by plaintiff — $3,953.35
Alleged breach of agreements entered into by plaintiff with defendant — 3,000.00
Reimbursement for amounts paid third parties for property damage attributed to plaintiff's negligence — 1,239.58
Plaintiff's failure to remit to defendant — 69.29

Total, $8,262.22

In its reply to defendant's answer and counterclaim, plaintiff denies it is indebted to defendant and prays that the counterclaim be dismissed.

In the course of the trial it was agreed that the sum of $1,605.40, itemized in the complaint as due and owing plaintiff, was in error and that the correct amount of that item should be $1,085.23. Defendant now admits liability for this claim, as corrected, and also admits liability for plaintiff's claim in the sum of $1,950.96.

During the trial, plaintiff admitted liability to defendant in the amount of $683.00 for overcharges and $35.00 in charges that were collected by plaintiff for defendant but were not previously remitted to defendant.

The facts giving rise to this dispute may be summarized as follows:

The plaintiff is a common carrier of goods by motor vehicle in the Chicago, Illinois area where it maintains a terminal, dock, offices and a garage. The defendant is a freight forwarder operating between Chicago, Illinois and St. Paul, Minnesota. It is defendant's function to solicit and transport goods from Chicago to St. Paul or vice versa. Defendant obtains less-than-truckload (LTL) shipments and consolidates them into truckload (TL) lots. A margin of profit is realized between the LTL rates paid by the shipper to defendant, and the TL rates paid by the defendant to the interstate trucking company.

In 1959, defendant had shipper-customers in the Chicago area for which it hauled freight to St. Paul. The defendant also hauled freight from St. Paul to Chicago. However, at this time defendant did not have its own terminal, equipment or employees in the Chicago area where shipments could be consolidated into TL lots, manifested, and shipped out. It was therefore necessary for defendant to have an agent in Chicago to perform these and other required services.

In 1959, defendant was using as its agent in Chicago, the Acme Cartage Company. It became necessary to obtain a new agent when Acme was no longer able to handle defendant's increasing volume of business. In the fall of 1959 defendant began negotiations with plaintiff for the purpose of acquiring a new agent in Chicago to replace Acme.

When the parties began actual operations together, they did so pursuant to oral agreements from November, 1959 to February, 1960. The written contract [3] which is the subject of this suit was entered into on February 1, 1960. Plaintiff and defendant operated under this agreement until December 31, 1960. During this period monthly billings were sent by plaintiff to defendant setting forth the amounts claimed to be due and owing for the prior month's business.

The parties terminated their contract on December 31, 1960. Shortly thereafter plaintiff requested and demanded that defendant pay it the amount claimed to be due under the invoices. Defendant requested time to audit its books to verify the amount due under the invoices and informed plaintiff that such an audit would take ninety days. In March of 1961, plaintiff made a formal demand by

3. The contract (plaintiff's exhibit 1) states that it was made and entered into at Chicago, Illinois. It is a standard form contract frequently used in transactions of this type and the rates agreed upon by the parties are inserted in typewritten form in a space provided for that purpose. The contract provides in part, as follows:

"6. Carrier [Defendant] agrees to pay Contractor [Plaintiff] for all pick up and delivery services performed under the terms of this agreement upon the following basis:

| | |
|---|---|
| 1 lb to 5000 lbs — .33¢ per cwt | $1.25 min charge |
| 5001 lb to 9999 lbs — .26¢ per cwt | Aggregate Wt. |
| 10000 lb to 15999 lbs — .25¢ per cwt | |

Receiving charges .20¢ per cwt — .50¢ minimum
Loading charges .10¢ per cwt"

letter[4] to defendant for the amount of $3,580.50 which was claimed to be due under the previously terminated contract. On April 14, 1961, plaintiff made a demand for $10,640.00 which it described as an amount due under the contract for "receiving charges previously omitted."[5]

This dispute arose upon defendant's refusal to pay the amounts claimed to be due and owing plaintiff. Defendant's admissions of liability with respect to certain portions of plaintiff's claim have narrowed the area of dispute between the parties. Defendant's principal disagreement with plaintiff's claim centers upon the amount of $10,640.00, which is demanded by plaintiff for "receiving charges."

It is defendant's contention that where its customer (the shipper) caused a shipment to be brought to plaintiff's dock, so that plaintiff in such case did not have to use his own truck to pick up said shipment, then and only then did the receiving charge apply. It is defendant's further contention that if the plaintiff did pick up said shipment with its own truck, then and only then did the pickup charge apply. Plaintiff would, therefore, be entitled either to the pickup charge or the receiving charge, but not to both charges in the same transaction.

Plaintiff and defendant are in agreement as to the general definition of a receiving charge. Mr. Arnold Moss, an employee of defendant defined it as a charge which is "made by any cartage company, drayman, carrier, who agrees to receive freight on behalf of another party." It is plaintiff's contention that a receiving charge is due when the services constituting receiving are performed and that plaintiff is entitled to such a charge regardless of whether or not it picked up the shipment. Plaintiff further contends that there is no agreement in the written contract of the parties to enforce defendant's position that receiving charges are to be omitted when either a pickup or delivery is made. The contract clearly recites a receiving charge and a pickup or delivery charge without mention of any relationship between them. It is plaintiff's contention that both charges are compensatory and both are separately enumerated in the contract, and that therefore plaintiff would be entitled to both the pickup charge and receiving charge in the same transaction.

■ The written contract, which is the subject of this suit, was entered into by the parties in Chicago, Illinois, and it was there that the contract was to be performed. The law of Illinois is controlling in this diversity action.[6]

■ It is axiomatic that the Court's function in a contractual dispute of this nature is to ascertain the intent of the parties to the contract and then give effect to such intention.

■ If the intent of the parties is readily ascertainable from the language of the contract, it is unnecessary for the Court to search out this intent by resorting to construction and interpretation of the contract.[7]

■ It is not clear from an examination of the contract here involved what intent the parties had with respect to the "receiving charges." The language of the contract precludes neither the interpretation placed upon it by plaintiff nor that placed upon it by defendant. In such a case, the contract may be said to be ambiguous,[8] and the Court may look to the actions of the parties in performance of the contract for the purpose of ascertaining their intent with respect thereto.[9]

4. Defendant's exhibit E.

5. Defendant's exhibit F.

6. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

7. Wilkin v. Citizens Nat. Bank of Paris, 298 Ill.App. 38, 18 N.E.2d 251; J. R.

Watkins Co. v. Salyers, 384 Ill. 369, 51 N.E.2d 574.

8. Wilkin v. Citizens Nat. Bank of Paris, supra.

9. American Spirits Mfg. Co. v. Western Mfg. & Oil Co., 213 Ill.App. 612; Sholl Bros. v. Peoria & P. U. Ry. Co., 196 Ill. App. 306, affirmed 276 Ill. 267, 114 N.E. 529.

The evidence discloses that plaintiff and defendant operated pursuant to the written agreement for eleven months during which time plaintiff billed defendant on a month-by-month basis. Both plaintiff and defendant have admitted certain billing and accounting errors during this period. However, plaintiff made no claim for the present "receiving charges" until four months after the parties ceased operating under the contract.

It is claimed that this amount ($10,-640.00) was erroneously omitted from the monthly billings sent to plaintiff. Plaintiff testified that the total amount of money received from defendant pursuant to the monthly billings was approximately $28,000.00. This is not the type of error which one would expect to arise in the normal course of business and plaintiff's failure to bill for this amount during the eleven month period of the contract is indicative of the original intent of the parties with respect to these "receiving charges."

At the trial three experts testified in behalf of defendant with regard to the meaning of the term "receiving charge." Such evidence is admissible to explain terms of a technical nature which are capable of a definite interpretation by experts.[10] This testimony indicated that in the transportation industry there is a general trade term known as a "receiving charge." This term is defined in the industry so as to apply only where shipments are brought to the dock of the local cartage contractor (plaintiff) by the shippers or common carriers. It does not apply where the local cartage contractor himself picks up the shipments. The testimony further indicated that, as the terms "receiving charge" and "pick-up charge" are generally understood in the industry, they could not both be assessed in the same transaction. There is nothing in the contract of plaintiff and defendant which indicates that the parties intended a definition for these terms other than that generally accepted in the industry.

In the light of the foregoing testimony, and upon review of all the evidence in the instant case, the Court finds that it was not the original intent of the parties to this contract that plaintiff be entitled to the receiving charges for which it presently makes claim.

In connection with defendant's counterclaims, the evidence supports a finding that defendant is entitled to the sum of $718.00 which consists of $683.00 arising out of overcharges erroneously billed to defendant, and $35.00 arising out of charges collected in defendant's behalf by plaintiff. The evidence fails to support the remainder of defendant's counterclaims.

The files and proceedings, together with all the evidence submitted in this case, convince the Court that plaintiff's claim, although substantially reduced by the findings of this Court, was nevertheless made in good faith and was of sufficient merit to satisfy jurisdictional requirements respecting the amount in controversy.[11] Counsel for plaintiff and defendant are to be commended for the thorough and lawyer-like manner in which this case has been tried and briefed.

Plaintiff is entitled to the sum of $3,036.19 against which amount defendant has a set off in the sum of $718.00.

Counsel for plaintiff may submit, consistent with the foregoing, findings of fact, conclusions of law, order for and form of judgment.

It is so ordered.

Both parties may have an exception.

10. Air Conditioning Corporation v. Honaker, 296 Ill.App. 221, 16 N.E.2d 153; Gottlieb v. Aridor Co., 324 Ill.App. 587, 58 N.E.2d 743.

11. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845; Home Ins. Co. of New York v. Trotter, 8 Cir., 130 F.2d 800.